(No. 48277.-

PAUL E. HAMER *et al.*, Appellees, v. FRANK A. KIRK, Director of the Department of Local Government Affairs, *et al.*, Appellants.

*Opinion filed Oct. 1, 1976.—Rehearing Denied Nov. 12, 1976.*

William J. Scott, Attorney General, of Chicago, and Jack Hoogasian, State's Attorney, of Waukegan (Paul V. Esposito, Assistant Attorney General, and Ephraim G. Sayad and William J. Blumthal, Assistant State's Attorneys, of counsel), for appellants.

Paul E. Hamer, of Northbrook, for appellees.

MR. JUSTICE CREBS delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Lake County awarding the petitioner, Paul E. Hamer, attorney's fees and expenses in the amount of $28,308.02.

The petitioner, representing a class of taxpayers, brought a class action suit against the Director of the Department of Revenue of the State of Illinois, the Director of the Department of Local Government Affairs of the State of Illinois and the Lake County Board of Review. The background of this protracted litigation, which has resulted in several prior appeals to this court, is summarized in *Hamer v. Lehnhausen,* 60 Ill. 2d 400. The trial court granted partial relief to the plaintiffs by ordering that the Lake County Board of Review equalize the level of assessment of property for each township in the County of Lake. The petitioner subsequently filed a petition requesting a judgment against the defendants for attorney's fees and expenses. The defendants filed objections to the petition, generally alleging that there was no

fund from which attorney's fees could be paid to the petitioner. The court denied the petitioner's request for attorney's fees based upon a percentage of the amount of the taxes claimed by the petitioner to have been saved or recovered. The court did rule, however, that the petitioner was entitled to attorney's fees in the amount of $20,280, based upon the amount of time spent on the case. In addition, the court held that the petitioner was entitled to recover expenses of $8,028.03. The court ordered that the Department of Local Government Affairs and the County of Lake each arrange for payment to the petitioner in the sum of $14,154.01. The defendants have appealed directly to this court pursuant to our Rule 302(b). (Ill. Rev. Stat. 1975, ch. 110A, par. 302(b).) The petitioner has cross-appealed, arguing that the trial court erred in refusing to recognize the existence of funds from which attorney's fees could be paid. In his cross-appeal, the petitioner also alleges error in the trial court's computation of the attorney's fees awarded.

The general rule is that, in the absence of a statute or an agreement of the parties, the successful party may not recover attorney's fees or the costs of the litigation. (*House of Vision, Inc. v. Hiyane*, 42 Ill. 2d 45; *People ex rel. Horwitz v. Canel*, 34 Ill. 2d 306.) An exception to that rule is that attorney's fees may be awarded where a fund has been brought within the control of the court by the parties. (*Hoffman v. Lehnhausen*, 48 Ill. 2d 323.) In *Hoffman v. Lehnhausen*, two class actions were filed on behalf of plaintiff taxpayers challenging the constitutionality of a certain statutory tax exemption. The class actions proved successful, and the attorneys for the plaintiffs moved for an allowance of costs and reasonable attorney's fees. The trial court denied that motion, and this court affirmed. Our holding was that, since no fund had been created from which attorney's fees could be paid, the trial court acted properly in refusing to grant such fees. We have reiterated this position in other cases featuring

class action taxpayer suits. *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority,* 51 Ill. 2d 126; *Doran v. Cullerton,* 51 Ill. 2d 553.

The petitioner contends that it was proper to award attorney's fees in the instant case because several funds exist from which fees could be paid. The petition for attorney's fees which was filed in the trial court alleged the existence of four such funds. The first of these purported funds allegedly resulted from the trial court's order of April 26, 1974, directing the Lake County Board of Review to equalize the level of assessment of property for each township in Lake County. The petitioner maintains that that order had the effect of shifting a tax burden from previously overassessed taxpayers to previously under-assessed taxpayers. The petitioner argues that the savings to the previously overassessed taxpayers constitute a common fund from which attorney's fees can be paid.

The petitioner also asserts that three funds were created because of his successful defense of a counterclaim filed by the County of Lake in which the county sought an order to reduce the equalization factor then in effect. While the record before this court does not substantiate his claim, the petitioner alleges that his efforts prevented the equalization factor from being reduced. Since the total assessed valuation of real property in Lake County would have been reduced if the equalization factor had been lowered, the petitioner contends that his efforts created additional tax funds for both the County of Lake and other taxing bodies within the county, such as school districts. The petitioner argues that the tax revenue saved on behalf of the county constitutes one fund and the tax revenue saved on behalf of the other taxing bodies constitutes another fund from which attorney's fees can be paid. He further argues that, had the tax revenues of the various school districts been diminished, a certain amount of State school revenue would have been diverted to the various Lake County school districts. The petitioner

maintains that his efforts prevented the State school revenues from being so diverted and that the savings to the State school revenues constitute still another fund from which attorney's fees can be awarded.

In addition to the four funds referred to in his petition for attorney's fees, the petitioner has argued on appeal that two other funds exist which can serve as the source of attorney's fees. The first of these funds is said to consist of money which should have been returned in 1974, according to petitioner, to those taxpayers whose real property had been overassessed. A portion of the trial court's order of April 26, 1974, states that the court was reserving the question of whether an improper classification had been created between urban and rural real property in Lake County. The court held that, if it were later proved that a disparity between urban and rural real property existed in Lake County for the 1973 tax year, the court would order that disparity eliminated by reduction of the assessed valuation of the overassessed property for the 1974 tax year. The petitioner asserts that evidence presented to the trial court did in fact prove that such a disparity existed. However, the trial court did not issue an order subsequent to April 26, 1974, giving any relief to taxpayers whose real property had allegedly been overassessed. The petitioner argues that, pursuant to the trial court's order of April 26, 1974, and the evidence subsequently presented to the trial court, the trial court should have ordered that some type of refund be given in 1974 to those taxpayers whose real property had been overassessed. The petitioner maintains that the money which should have been refunded somehow constitutes a fund from which attorney's fees could be paid.

The final fund alleged by the petitioner consists of money that underassessed taxpayers allegedly should have paid to taxing bodies for the 1967 through 1972 tax years. The petitioner contends that the Lake County Board of Review should have been ordered to reassess upwards

previously underassessed real property and to determine that certain taxpayers owed back taxes for the 1967 through 1972 tax years. The petitioner further argues that the back taxes should have been collected from owners of previously underassessed real property in subsequent tax years, beginning in 1974. This additional tax revenue could have been paid into the court and distributed to the various taxing bodies. The petitioner maintains that this money constitutes a fund from which attorney's fees could have been paid.

An analysis of the petitioner's arguments with respect to funds from which attorney's fees can be paid demonstrates that no such funds exist. Overlooking the apparent inconsistencies in petitioner's fund theories, we note that at no point in his argument has petitioner contended that a specific fund under the control of the court was in existence. The petitioner is asking to be paid attorney's fees from the alleged savings of previously overassessed taxpayers, from the treasuries of various taxing bodies or from the pockets of previously underassessed taxpayers who allegedly should have been ordered to pay back taxes. In *Hoffman v. Lehnhausen,* we stated:

> "We are aware of no authority under which the process of tax collection and distribution could have been interrupted to divert from the governmental bodies that had levied the taxes an amount fixed by the court as fees for the attorneys for the plaintiffs." (48 Ill. 2d 323, 329.)

We recognized in *Hoffman* that attorney's fees could not be awarded to the attorneys for the plaintiffs because no fund had been "brought into court." (48 Ill. 2d 323, 329.) In *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority,* we again recognized that a fund must be "brought into court" if it is to serve as a source of attorney's fees. (51 Ill. 2d 126, 130.) In *People ex rel. Stephens v. Holten,* 304 Ill. 394, this court affirmed the

trial court's denial of a petition for attorney's fees and stated:

"There is no provision in equity, however, permitting a court, in the exercise of equitable powers, to declare an allowance of fees and the payment of them out of a fund of this character before the fund comes under the control of the court. *** There is no such fund at this time in the control of the court from which an allowance of reasonable attorney's fees could be made." (304 Ill. 394, 399.)

(See also *Doran v. Cullerton,* 51 Ill. 2d 553; compare *Leader v. Cullerton,* 62 Ill. 2d 483, 487.) Since no fund had been placed under control of the court in the instant case, the trial court was without authority to award attorney's fees to the petitioner.

The petitioner maintains that, even if this court finds that no fund exists from which attorney's fees can be paid, an award of such fees can be sustained on other theories. One such theory advanced by the petitioner is that attorney's fees may be awarded when the services rendered have benefited the public interest. There is no authority in Illinois to support an award of attorney's fees solely on the basis of a public interest rationale. Petitioner acknowledges this to be the case, but urges us to fashion an additional exception to the general rule in order to "meet the new conditions which recognize the need for more public representation." We are unpersuaded by petitioner's argument. The United States Supreme Court rejected similar reasoning in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612. In *Alyeska,* several environmental organizations brought suit in an effort to prevent issuance of permits for construction of the trans-Alaskan oil pipeline. Although subsequent legislation rendered that effort unsuccessful, the Court of Appeals for the District of Columbia circuit held that the plaintiffs were entitled to an award of

attorney's fees. The court based its decision primarily upon the notion that the plaintiffs had acted as private attorneys general in advancing and protecting "substantial public interests" and ensuring "the proper functioning of our system of government." (495 F.2d 1026, 1036.) On appeal, the Supreme Court reversed, holding that "it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner and to the extent urged by respondents and approved by the Court of Appeals." (421 U.S. 240, 247, 44 L. Ed. 2d 141, 147, 95 S. Ct. 1612, 1616.) We believe that such a determination by this court would be equally inappropriate.

The petitioner also argues that attorney's fees can be awarded in a class action case on the ground that the services of the attorney have conferred substantial benefits upon the class of persons represented. We implicitly rejected this argument in *Hoffman v. Lehnhausen*. In upholding the denial of attorney's fees in that case, we stated:

"There is no doubt that the attorneys for the plaintiffs have rendered valuable services and that their efforts have benefited the class of persons they purported to represent. It is also true that allowances of fees and expenses to those who volunteer to represent the rights of others are more freely made today than in the past. \*\*\* Nevertheless the principle of *stare decisis* remains a basic tenet of our legal system, and one of the consequences is that a legal doctrine established in a case involving a single litigant characteristically benefits all others similarly situated." (48 Ill. 2d 323, 329-30.)

We hold that, in the absence of a fund, a plaintiff's attorney is not entitled to attorney's fees merely because he has conferred a benefit upon members of a class. If a

fund were available from which attorney's fees could be paid, the benefit to the public and to the class would be relevant in determining the amount of the fee. *Flynn v. Kucharski*, 59 Ill. 2d 61.

Still another theory upon which the petitioner relies is that attorney's fees may be awarded against a party who is in wilful disobedience of a court order. The petitioner maintains that the defendants have been in wilful disobedience of the mandate of this court in the case of *Chicago, Burlington & Quincy R.R. Co. v. Department of Revenue*, 17 Ill. 2d 376. In that case, we stated that it was the duty of the Department of Revenue to assess or equalize assessments of all property at full, fair cash value. The petitioner insists that the defendants have been and still are in violation of that order. In a closely related argument, the petitioner asserts that attorney's fees should be awarded to the successful litigant if the opposing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. The defendants have allegedly acted in such a manner by failing to comply with the aforementioned mandate and by otherwise impeding the progress of this litigation. Assuming without deciding that these theories constitute properly cognizable exceptions to the general Illinois rule, we conclude that petitioner has failed to demonstrate their applicability to this case. The petitioner did not allege in his petition for attorney's fees that the defendants were in wilful disobedience of a court order or that the defendants have acted in bad faith, vexatiously, wantonly or for oppressive reasons. The trial court made no such finding, and no record has been presented to this court from which we can make such a finding.

While we have heretofore examined those arguments which the petitioner has advanced most strenuously before this court, we are mindful that petitioner also contends that statutory authority exists to support the trial court's

award of attorney's fees and expenses. Initially, petitioner relies upon section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41) and Supreme Court Rule 219 (Ill. Rev. Stat. 1975, ch. 110A, par. 219; see also Ill. Rev. Stat. 1975, ch. 110, par. 3). Section 41 relates to untrue pleadings, and Rule 219 deals with refusal or failure to comply with our rules. Petitioner's reliance upon these provisions is clearly misplaced. The petitioner separately moved for imposition of sanctions, including attorney's fees and expenses, against the defendants, pursuant to section 41 and Rule 219. That motion was denied. We find no indication in the record that the trial court considered either of these provisions as affording an independent basis for its award.

As a further source of statutory authority, petitioner cites section 18 of "An Act to revise the law in relation to costs" (Ill. Rev. Stat. 1975, ch. 33, par. 18) and section 57.1(5) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1(5)). Section 18 states:

> "Upon the plaintiff dismissing his suit, or the defendant dismissing the same for want of prosecution, the defendant shall recover against the plaintiff full costs; and in all other civil cases, not otherwise directed by law, it shall be in the discretion of the court to award costs or not; and the payment of costs, when awarded, may be compelled by execution."

Section 57.1(5) reads as follows:

> "Unless the parties agree by stipulation as to the allowance thereof, costs in proceedings authorized by this section shall be allowed in accordance with rules. In the absence of rules the practice followed in ordinary actions at law or in equity shall be followed if applicable, and if not applicable, the costs may be taxed as to the court seems just."

While these sections allow recovery of statutory costs, such as clerk filing fees or fees for a sheriff's service of summons, they do not permit the award of attorney's fees and expenses, and thus are not applicable here.

Accordingly, the judgment of the circuit court of Lake County awarding attorney's fees and expenses to the petitioner is reversed.

*Judgment reversed.*