Eddie G. HINTON, Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, et al.,
Defendants.

Civil Action No. H–96–2070.

United States District Court,
S.D. Texas.

April 7, 1997.

Richard J. White, Buckley, Mathews and White, Houston, TX, for Plaintiff.

Philip J. John, Jr., Jennifer M. Smith, Baker & Botts, Houston, TX, Jacqueline R. Denning, Kenneth I. Juster, Jay Kelly Wright, Arnold and Porter, Washington, DC, for FNMA.

David J. Beck, Beck, Redden & Secrest, Houston, TX, for Magnolia.

Opinion on Attorney's Lien

HUGHES, District Judge.

1. *Introduction.*

After having lost the case on the merits, Hinton's counsel filed an attorney's lien with the Federal National Mortgage Association, claiming an interest in refunds that may result from a possible change in policy. The lien is void because FNMA's change of policy, if it comes, is the result of something other than this lawsuit. Having done nothing illegal, FNMA's new policy could not be a voluntary compliance in response to the threat of losing the litigation. If FNMA wins and still decides to adopt the economic or political posture that Hinton urged, his counsel have earned no entitlement to fees from FNMA's customers.

2. *Background.*

Hinton sued to compel FNMA to notify its borrowers of their right to cancel private mortgage insurance when they meet the specified level of equity. On November 13, 1996, this court rendered a judgment for FNMA, holding, among other things, that Hinton was not a third-party beneficiary of either FNMA's contract with mortgage servicers or FNMA's servicing guidelines and Hinton suffered no cognizable injury. This court candidly observed that FNMA had the power to change its policy unilaterally.

Shortly after appealing the dismissal, without superseding it, Hinton's counsel served FNMA with a lien for fees on the fund arising from the change of policy. Hinton's counsel had learned from press releases that FNMA was considering amending its policy on private mortgage insurance.

Hinton's counsel claim that they are entitled to fees if FNMA changes its guidelines to make them more favorable to mortgagors. They claim to have an attorney's lien on "any recovery or benefit conferred resulting from the filing in the [Hinton] case or any similar case that may be filed hereafter." They demand that FNMA withhold twenty-five

percent of refunds to be made to its mortgagors if the change is made.

### 3. Attorney's Lien.

█ Under Texas law, an attorney's lien for fees is valid only (a) if the person over whom the lien is asserted is the attorney's client, and (b) the attorney has collected and possesses a judgment or a settlement on the client's behalf. *See Finkelstein v. Roberts,* 220 S.W. 401, 405 (Tex.Civ.App.—Ft. Worth 1920, writ dism'd); *Thomson v. Findlater Hardware Co.,* 156 S.W. 301, 303 (Tex.Civ. App.—Austin 1913, no writ). The lien asserted by Hinton's counsel meets neither requirement.

Hinton's counsel claim to have a lien on twenty-five percent of all money returned to any mortgagor—not just money returned to Hinton. These thousands of mortgagors are neither parties to the litigation nor clients of Hinton's counsel. Moreover, Hinton's counsel wants to put a lien on recovery from "similar case[s] that may be filed hereafter." Not only does his counsel seek to benefit from future plaintiffs who are not their own clients but also from future lawsuits on which they do no work. As Hinton's lawyers know, there are or have been other lawsuits about this same policy; they have no property right in the claim as an intellectual construct.

There was no certified class, no order appointing Hinton's counsel to represent a class, no notice to potential class members, no opportunity for potential class members to opt out of the purported class, and no opportunity for class members or the court to object to Hinton's counsel's unilateral seizure of an interest in mortgagors' potential refunds.

This is not a case in which a fee-shifting statute might apply, like a civil rights action, nor a derivative or shareholder class action. Hinton was not a successful litigant. His complaint failed to survive a motion to dismiss. There are no settlement funds at issue. Hinton did not succeed in creating a common fund through litigation or otherwise. His lawyers are simply attempting to create a common fund through this claim of a lien.

Hinton's counsel have collected no judgment or settlement on behalf of anyone. They have no monies in their possession on which to assert a lien. An attorney's lien is not a fee-shifting device and cannot be used to require an opposing party to create a fund for plaintiffs counsel. If Hinton had prevailed, he could have sought attorney's fees under Texas law. He did not.

### 4. Common Fund.

█ The "common fund" doctrine does not entitle Hinton's counsel to fees. That technique applies only to counsel who prevail and create a specific monetary fund under the control of the court. *See Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 801 (Tex.1974); *see also Hamer v. Kirk,* 64 Ill.2d 434, 1 Ill.Dec. 336, 340, 356 N.E.2d 524, 528 (1976). "Where successful parties have, through their efforts at litigating *their individual claims,* created a common fund or other substantial benefit which inures to a larger discrete class, *over whom the court has jurisdiction,*" the common fund doctrine applies. *Avitts v. Amoco Prod. Co.,* 840 F.Supp. 1116, 1118 (S.D.Tex.1994) (emphasis added).

Hinton did not prevail. Hinton is not a class; he is all alone. The court has no fund. Hinton may have succeeded in causing a change of policy, but he did not do it by succeeding in this case.

### 5. Discovery on Causation.

Hinton's counsel urge that they have the right to conduct discovery on FNMA's reasons for contemplating a change in its mortgage insurance policy. They say that the change is in response to the filing of their lawsuit and other lawsuits brought by other lawyers and, having asserted this, they are entitled to examine FNMA's people.

The answer, however, is the same: They are not entitled to a factual determination of the causation of FNMA's possible change because FNMA has a judgment that it has committed no legal wrong. Hinton lost the case completely; FNMA did not change its policy in anticipation of an adverse ruling in this case.

How FNMA came to consider changing its policies does not matter unless the change was in response to a legal finding against FNMA—a finding earned by the lawyering of Hinton's counsel. Here, Hinton's counsel overlook this important predicate. Hinton's counsel cannot claim a property interest in a fund owned by an adverse party, FNMA, which may be paid to hundreds of thousands of parties whom they never represented.

### 6. *Conclusion.*

FNMA did not change its policy during this case. This court did not order FNMA to change its policy. FNMA has not yet changed its policy. Hinton's counsel say that FNMA almost settled. That is not even particularly interesting. Somehow the case got to a decision on the merits without a settlement. Maybe FNMA negotiated negligently.

The operative word here is FNMA's policy, and its change of policy when it comes will not be a correction of a legally established wrong. Only a correction of a legal wrong would give Hinton's counsel a right to collect a fee. Even if the court assumes that Hinton's actions somehow benefitted other insurance-paying borrowers, the common fund doctrine cannot apply because "one indispensable requirement" is missing-this court lacks jurisdiction over the nonparty borrowers. No class was ever certified.

These lawyers proudly tout a message of vindication of the common man from exploitation by predatory corporations. The truth, however, becomes clear: Counsel seek to seize money from these same commoners without earning the fee much less obtaining the "clients" permission to represent them.

Judgment on Attorneys' Lien

The lien notice served by Eddie G. Hinton's counsel on the Federal National Mortgage Association is void.