**VILLAGE OF ROCKTON, ILLINOIS, Plaintiff,**

v.

**SONOCO PRODUCTS COMPANY, Defendant.**

Case No: 14 C 50228

United States District Court, N.D. Illinois.

Signed September 23, 2015

Benjamin B Gould, Daniel P. Mensher, Lynn Lincoln Sarko, Gretchen Freeman Cappio, Keller Rohrback L.L.P., Seattle, WA, Adam S. Long, Jody L. Booher, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, Melissa Kaye Sims, Sims Law Office, Princeton, IL, for Plaintiff.

Scott Collins Sullivan, Russell D. Anderson, Williams & McCarthy LLP, Rockford, IL, S. Ross Shealy, Haynsworth Sinkler Boyd, P.A., Columbia, SC, Stephen F. McKinney, Haynsworth Sinkler Boyd, P.A., for Defendant.

## ORDER

FREDERICK J. KAPALA, District Judge

Defendant's motion for judgment on the pleadings [34] is granted in part and de-

nied in part. Counts 2–8, 13–16, 19–27, 34–53, 56–57, 59–75, and 80–82 of the consolidated amended complaint are dismissed, and Rockton's claim for attorneys fees and costs is stricken. All other claims remaining pending, and the parties should contact the Magistrate Judge for all further pretrial proceedings.

## STATEMENT

Plaintiff, Village of Rockton, Illinois ("Rockton"), initiated this litigation against defendant, Sonoco Products Company ("Sonoco"), by filing 81 separate complaints in state court alleging violations of the Rockton Municipal Code based on purported environmental contamination and other hazardous conditions on Sonoco's property located within the village. The state-court complaints alleged that the various ordinance violations began on or about December 2, 2007, and continued "every day thereafter through the present date and beyond," and Rockton sought penalties of up to $750 per day per violation. Thereafter, Sonoco removed each of the complaints to federal court pursuant to this court's diversity jurisdiction and consolidated all of the actions into this single case. Rockton subsequently filed a consolidated amended complaint re-alleging the 81 ordinance violations as Counts 1 through 81 and also raising a claim of unjust enrichment in Count 82. The amended complaint seeks damages in excess of $155,000,000 as of the time of filing with potential damages continuing to accrue at a rate of up to $60,750 per day. Currently before the court is Sonoco's motion for judgment on the pleadings seeking to dismiss several of Rockton's claims pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

According to the pleadings, Sonoco has owned and operated a paper mill facility located at 200 Hawick Street in Rockton (the "Site"), which is situated on the north bank of the Rock River, since it purchased the Site in 1963. Prior to Sonoco's purchase, several other entities also ran a paper mill at the Site since 1851. During its tenure, Sonoco manufactured paperboard at the Site until it closed the facility in late 2008 due to economic conditions. Despite efforts by Rockton to acquire the property from Sonoco since it ceased operations, Sonoco is still the owner of record for the Site.

Sonoco first became aware of potential environmental concerns at the Site in March 2006 when a contractor installing a new water line encountered petroleum-contaminated soil. The release of the fuel oil into the soil was attributed to leaking underground pipes from an aboveground storage tank. Sonoco reported the leak to the Illinois Emergency Management Agency and subsequently hired contractors who excavated a total of 422 tons of petroleum-impacted soil for off-site disposal. Following additional investigation, Sonoco also began removing contaminated groundwater from the Site and enrolled the Site in the Illinois Environmental Protection Agency's ("IEPA") Site Remediation Program ("SRP").[1] At that

---

1. According to the IEPA's website:

 The SRP cleanup program provides Remediation Applicants (i.e., any persons seeking to perform investigative or remedial activities) the opportunity to receive IEPA review, technical assistance and no further remediation determinations from the Illinois EPA. This program is designed to be flexible and responsive to the needs of the

 Remediation Applicants. The goals and scope of actions at these sites are normally defined by the Remediation Applicants.

 The Illinois EPA is authorized to issue No Further Remediation (NFR) letters to the Remedial Applicants who have successfully demonstrated, through proper investigation and, when warranted, remedial action, that environmental conditions at their remedia-

time, Sonoco submitted only a Focused Site Investigation Report regarding the contaminated soil and a Remedial Action Plan that called for the installation of a groundwater pump and treat system, both of which were approved by the IEPA. Although Sonoco later discontinued contact with the IEPA, the groundwater remediation system was installed and operated intermittently between April and August 2007. However, the pump and treat system was discontinued after technical difficulties were encountered because of fluctuating groundwater elevation and contamination was identified in an up-gradient well. After that, contaminated water was manually removed from the wells on a regular basis.

In late 2009, after it had closed its facility and ceased operations at the Site, Sonoco hired Environmental Resources Management ("ERM") to conduct a Phase I and Phase II investigation of the facility. Although these investigations were conducted without IEPA oversight,[2] it appears that ERM conducted at least two rounds of sampling and analysis of soil and groundwater conditions at the Site between 2009 and 2010. Based on its investigation, ERM identified several Recognized Environmental Conditions that could adversely impact the environment and also determined that there were several areas that may require remediation based on samples which contained contamination by various compounds at concentration levels greater than the amounts listed in the IEPA's Tiered Approach to Corrective Action Objectives ("TACO") regulations.

In 2011, the mayor and other representatives of Rockton traveled to Sonoco's corporate headquarters to discuss the possibility of purchasing the Site. At or around that same time, Sonoco provided Rockton with at least a summary of the ERM Phase II investigation report. Ultimately, it appears that the parties were unable to come to an agreement on an acceptable sales price for the property. In fact, it seems that the closest the parties ever came to reaching a deal was in June 2013 when Sonoco received an option agreement executed by Rockton to purchase the Site at fair market value in an "as is" condition.

In the meantime, on January 22, 2013, the Rockton Board of Trustees ("the Board") passed Resolution 2013–101, which requested the IEPA's assistance in conducting an environmental investigation of the Site. The IEPA obliged and initiated work on a Brownfield Redevelopment Assessment for the Site on February 26, 2013. Thereafter, it appears that Sonoco had several discussions with the IEPA regarding the additional testing that was requested by Rockton, and by August 2013 Sonoco had determined that it was in its best interest to "investigate pursuing a brownfields-type arrangement under the Illinois Site Remediation Program or TACO." Sonoco communicated this intention to Rockton in a letter addressed to the mayor and declined to give Rockton an option to purchase the Site "until the brownsfield [sic] process is underway, if not completed." In October 2013, the IEPA continued its assessment and conducted fieldwork at the Site, which includ-

tion site do not present a significant risk to human health or the environment. The NFR letter signifies a release from further responsibilities under the Illinois Environmental Protection Act. This program's activities are paid by the parties requesting the Illinois EPA's oversight.

Illinois Environmental Protection Agency, "Site Remediation Program," http://www.epa. illinois.gov/topics/cleanup-programs/srp/index (last visited Sept. 17, 2015).

2. According to Sonoco, the full report from ERM was later provided to the IEPA in 2013.

ed the collection of numerous soil and groundwater samples.

On March 27, 2014, Sonoco provided the IEPA with an update on the progress at the Site as well as specific comments in response to a prior inquiry from the IEPA. In the letter, Sonoco indicates that, "[b]ased on all of the new information compiled from the various sources, Sonoco believes that there is enough data to now fully characterize the entire site, instead of just the specific area of the remediated oil leak." Sonoco requested that it "be allowed to work in conjunction with [IEPA] to develop a revised Site Investigation Report, Remediation Objectives Report, and Remedial Action Plan for the site," and that "[t]he goal would be to obtain a no further remediation letter from [IEPA] for the site."

On May 16, 2014, the IEPA reported the results of its Brownfield Redevelopment Assessment. Several of the samples collected from the Site were found to contain either organic or inorganic compounds at concentration levels greater than the corresponding Corrective Action Objectives. As a result, the IEPA concluded that there were "several areas on the property that should be addressed further in accordance with the TACO regulations" and "recommended that site officials re-establish a close working relationship with Illinois EPA through the Voluntary Site Remediation Program to proceed with future investigation, remediation, and redevelopment."

Shortly thereafter, on May 28, 2014, the IEPA indicated that Sonoco's responses from the March 27 update letter were acceptable, and that it anticipated Sonoco would "submit a revised Site Investigation Report, Remedial Objectives Report, and Remedial Action Plan utilizing current data and evaluating all exposure pathways for industrial/commercial land use." The next day, on May 29, 2014, Sonoco submitted its Comprehensive Site Investigation Report and Remediation Objectives Report to the IEPA,[3] which was subsequently approved on August 25, 2014. As a result, it is undisputed that the entire Site is now enrolled in the SRP,[4] and Sonoco is currently working with the IEPA to obtain a No Further Remediation letter.

Rockton took a more aggressive and punitive approach in response to the IEPA's Brownfield Redevelopment Assessment. At a meeting on July 22, 2014, the Board passed Ordinance 2014–21 "amending Village code regarding violation remedies." This ordinance caused the following language to be added to sections 92.023 and 92.024 of the Rockton Municipal Code:

Any person, persons, firm, company, corporation or association or their representatives violating any provision of this chapter, upon conviction or a finding of liability, the village may seek an order: requiring the violator to remediate such violation at the violator's sole costs and

3. Sonoco's submission did not include a Remedial Action Plan, but it did indicate that one would be forthcoming: "From this point, Sonoco will be looking at various remediation technologies, collecting any additional data needed, and performing an on-site inspection of the building and site in order to begin to develop the remediation action plan as the next phase of this project."

4. In its consolidated amended complaint, Rockton alleged that "Sonoco has not reinitiated its participation in the voluntary site

remediation program," even though it should have known about Sonoco's participation in the SRP at that time it filed the amended complaint based on the contents of Sonoco's previously filed answers to the 81 original complaints. In its response to the motion to dismiss, Rockton explains that "it was not until after the Village filed its amended complaint that the validity of Sonoco's enrollment of the full site was verified by the Illinois EPA." The court will accept this explanation for the discrepancy.

expense; authorizing the village to remediate the violation with the village being reimbursed by the violator for any and all costs, incurred by the village for such remediation; and/or the imposition of fines of up to $750 per day for each and every violation with each day a violation exists constituting a separate offense. In addition to any other relief available to the village, the village may apply to a court of competent jurisdiction for any injunction to prohibit the continuation of any violation of this chapter, including, but not limited to, seeking a temporary restraining order, temporary injunction and/or permanent injunction. The village shall also be entitled to recover any and all costs, including attorney fees, it incurs as a part of enforcing any violation of this chapter.

At that same meeting, the Board went into executive session "to discuss probable or eminent litigation pertaining to property clean-up," which strongly suggests that these changes were added specifically in anticipation of the instant litigation.

In a letter to Sonoco dated September 9, 2014, Patricia Diduch, the Village Code Enforcement Officer, expressed concern over the "blight and contamination" at the Site, noting further that "no efforts have been made by your company to remediate this property" and that "the property has continued to dilapidate." Diduch also stated that Rockton "has recently received an extensive report from the [IEPA] demonstrating that Sonoco has created significant hazardous contamination throughout the site." Based on this information, Diduch indicated that the Site was in violation of sections 92.023 [5] and 92.024 [6] of the Rockton Municipal Code and that "[f]ines for these violations have already accrued, and will continue to accrue, until the violations cease." Diduch further informed Sonoco that Rockton was authorized to proceed with an abatement action if it so chooses, and that "[t]o avoid an abatement action, you are required to remedy the violations within one week." A nearly identical letter was sent on September 11, 2014, alleging that the Site was also in violation of section 92.025 [7] of the Rockton Municipal Code and requiring Sonoco to "remedy the violations within one week" to avoid an abatement action.

Less than one week later, on September 15, 2014, Rockton filed its 81 complaints against Sonoco in state court seeking monetary penalties for alleged violations of sections 92.023, 92.024, and 92.025 of the Rockton Municipal Code, the majority of which are based on the organic and inorganic compounds that were found by the IEPA in its Brownfield Redevelopment

---

5. Section 92.023, which is titled "Things Detrimental to Health," provides, in relevant part, that "[a]ny building, vehicle, structure, receptacle, yard, lot or premises shall be maintained in a safe and sanitary condition at all times, whether vacant or occupied."

6. Section 92.024, which is titled "General Prohibition of Unhealthful Business," provides, in relevant part, that "[i]t shall be unlawful for any substance, matter or thing of any kind whatsoever which shall be dangerous or detrimental to health to be allowed to exist in connection with any business, be used therein or thereon or to be used in any work or labor carried on in the village, and no

health menace shall be permitted to exist in connection with any business or in connection with any such work or labor."

7. Section 92.025, which is titled "Noxious Matter, Reuse, Offal and Garbage Dumping Prohibited," provides that "[i]t shall be unlawful for any ashes, rubbish, tin cans and all combustibles to be deposited or dumped upon any lot or land in the village, but must be deposited or dumped in the area set aside for that purpose." Unlike the other two sections of the Rockton Municipal Code at issue in this case, section 92.025 was not amended pursuant to Ordinance 2014–21.

Assessment to be present at the Site in concentrations greater than allowed under the Tier 1 TACO regulations. In addition to these alleged environmental hazards, several additional counts are based on the physical condition of the Site, including allegations of stagnant water, debris, broken windows, and excessive weeds. Although it is unclear what purpose it served, on October 7, 2014, after the complaints had already been filed, the Board approved Resolution 2014–114 "Adopting Findings of the IEPA and Declaring the Former Sonoco Property to be a Public Health Hazard and in Violation of Village Code."

After removal to federal court, Sonoco now seeks dismissal of several claims in the consolidated amended complaint pursuant to Rule 12(c). In particular, Sonoco seeks dismissal of 61 counts that are based on the presence of environmental contaminants, arguing in the alternative that these counts are preempted by state law, barred by the doctrine of primary jurisdiction, and based on municipal ordinances that are unconstitutionally vague as applied.[8] Sonoco also argues that Rockton has failed to state a claim for unjust enrichment as alleged in Count 82 and that Rockton's claim for attorney's fees and costs should be dismissed as a matter of law. Finally, Sonoco contends that all ordinance claims should be dismissed to the extent they seek to impose retroactive fines for conduct that occurred prior to September 9, 2014, the date Rockton first gave notice to Sonoco of the alleged ordinance violations.

## II. ANALYSIS

Rule 12(c) permits a party to move for judgment on the pleadings. "The pleadings include the complaint, the answer, and any written instruments attached as exhib-

its." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir.1998). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir.2015). In reviewing a motion under Rule 12(c), the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Fail–Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir.2012). To avoid dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation marks omitted).

### A. Ordinance Violations Based on Environmental Contaminants

In its motion, Sonoco primarily argues that all of the ordinance violations based on alleged environmental contamination are preempted by state law due to Sonoco's active participation in the IEPA's SRP. According to Sonoco, Rockton's attempt to regulate the remediation of these environmental concerns through enforcement of its general municipal ordinances is in conflict with and frustrates the purpose of the statutory scheme established by state law as part of the SRP. In response, Rockton contends, among other things, that it "does not seek to impose *any* program of restoration, protection or enhancement of the environment, at all. Rockton seeks only to assess a penalty for violations that exist and will continue to exist until such time as the violations are cured, if ever." As discussed below, the court

---

8. Specifically, Sonoco seeks dismissal of the claims raised in Counts 2–8, 13–16, 19–27, 34–53, 56–57, 59–75, and 80–81.

concludes that Rockton's environmental-based claims are preempted.

"In Illinois, municipalities that are not home-rule units have limited powers." *Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 787 (7th Cir.2008) (citing *Hawthorne v. Vill. of Olympia Fields*, 204 Ill.2d 243, 255, 274 Ill.Dec. 59, 790 N.E.2d 832 (2003)); *see also Rock Energy Coop. v. Vill. of Rockton*, 614 F.3d 745, (7th Cir.2010) (recognizing Rockton as a "non-home-rule municipality" of Illinois). A non-home-rule municipality has "no inherent powers" and "may exercise only those powers that the state legislature confers upon them, either expressly or impliedly, by statute." *Hawthorne*, 204 Ill.2d at 255, 274 Ill.Dec. 59, 790 N.E.2d 832. Moreover, "a non-home-rule unit ... cannot adopt ordinances under a general grant of power that infringe upon the spirit of state law or are repugnant to the general policy of the state." *Id.* at 258–59, 274 Ill.Dec. 59, 790 N.E.2d 832. Thus, local ordinances which were enacted under a general grant of power "that conflict with the spirit and purpose of a state statute are preempted by the statute." *Id.* at 259, 274 Ill.Dec. 59, 790 N.E.2d 832; *see also Vill. of Mundelein v. Hartnett*, 117 Ill.App.3d 1011, 1015, 73 Ill.Dec. 285, 454 N.E.2d 29 (1983) ("[W]here there is a conflict between a statute and an ordinance, the ordinance must give way.").

The IEPA's Site Remediation Program is created by statute and intended to "establish a risk-based system of remediation based on protection of human health and the environment relative to present and future uses of the site" and "provide incentives to the private sector to undertake remedial action," among other things. 415 ILCS 5/58(1), (3); *see also* 415 ILCS 5/58.5 (establishing a tiered approach for risk-based remediation objectives); 35 Ill. Admin. Code 742.110 (providing an overview of the tiered approach and describing the scope of Tier 1, Tier 2, and Tier 3 evaluations). The SRP provides "the procedures for the investigative and remedial activities at sites where there is a release, threatened release, or suspected release of hazardous substances, pesticides, or petroleum and for the review and approval of those activities." 415 ILCS 5/58.1(a)(1). In general, participation in the SRP consists of several steps, starting with an initial Site Investigation and Site Investigation Report. 415 ILCS 5/58.6. Here, Sonoco has submitted and had approved by the IEPA a Comprehensive Site Investigation Report, which is "designed to identify all recognized environmental conditions and all related contaminants of concern that may be expected to exist at a remediation site." 35 Ill. Admin. Code 740.420. Following that initial step, a participant must also prepare and submit for approval a Remediation Objectives Report, a Remedial Action Plan, and a Remedial Action Completion Report. 415 ILCS 5/58.6. If the participant successfully completes all of these steps with the approval of the IEPA, then the IEPA is required to issue a "No Further Remediation Letter," which "signifies a release from further responsibilities under [the Illinois Environmental Protection Act] ... and shall be considered prima facie evidence that the site does not constitute a threat to human health and the environment and does not require further remediation...." 415 ILCS 5/58.10(a)-(b); *see also* 35 Ill. Admin. Code 740.605(b) ("The No Further Remediation Letter shall be issued only to Remediation Applicants who have completed all requirements and received final approval of the Remedial Action Completion Report by the Agency or on appeal.").

In their motion to dismiss, Sonoco argues that "[t]he remediation process established by the SRP is a comprehensive regulatory scheme" and that Rockton's attempt to circumvent this system by at-

tempting to regulate the environmental contaminants found at the Site through enforcement of local ordinances should be barred. The Seventh Circuit was faced with a similar preemption issue in *Village of Depue, Illinois v. Exxon Mobil Corp.*, 537 F.3d 775 (7th Cir.2008). In that case, the defendants were in the process of investigating and performing interim remedial actions at an environmentally hazardous site pursuant to the terms of a consent order that had been entered into with the IEPA as a result of a prior lawsuit. *Id.* at 780. While this process was ongoing, the Village of DePue posted "Notices to Abate Nuisance," which "ordered [the defendants] to have the [hazardous] materials removed and the site cleaned of all contaminants to the satisfaction of the Village within ten days." *Id.* at 781. "If [the defendants] failed to comply within ten days, the notices required [the defendants] to pay a nuisance fine of $750 per day until the site cleanup was complete...." *Id.* The case eventually made its way to federal district court where the defendants filed a motion to dismiss arguing, among other things, that the Village's claims were preempted by state law. *Id.* The district court concluded that the nuisance claims "conflicted with the process required by the IEPA and its implementing regulations because the Village was seeking immediate and undefined completion of the cleanup at the site" and agreed that the claims were therefore preempted by Illinois law. *Id.* at 781–82.

On appeal, the Seventh Circuit held that the Village's claims were preempted by state law and affirmed. *Id.* at 789. In reaching this conclusion, the Court reasoned that

> [i]f the Village were permitted to apply its nuisance ordinance to force [the defendants] to complete *immediately* the cleanup of the site, on penalty of $750 per day for noncompliance, then it could prevent compliance with the measured

cleanup process adopted by Illinois through the Consent Order under the authority of Illinois law.

*Id.* at 788. The Court further explained that the Illinois Environmental Protection Act had been enacted "to safeguard the environment and to restore contaminated areas through a phased and carefully considered process," and that "[i]gnoring this process by conducting and concluding a cleanup to the satisfaction of the Village is not a plan in service to the goals of the Illinois Act." *Id.* at 789. Instead, the Court concluded that the Village's application of its nuisance ordinance would "frustrate the purpose of the Illinois Act," *id.* at 788, and that it was "overreaching because it attempts to regulate an environmental hazard ... that already is subject to a cleanup under the authorization and direction of the state," *id.* at 789.

▮ Based on the analysis in *DePue*, the court agrees that Rockton's claims alleging local ordinance violations based on the presence of environmental contaminants found at the Site are preempted by state law, specifically the Site Remediation Program which is a component of the Illinois Environmental Protection Act. The court acknowledges that *DePue* differs from the instant case because it involved a binding consent order, whereas here Sonoco is voluntarily participating in the SRP. However, that distinction does not change the court's analysis, so long as Sonoco continues its active participation in the SRP. Once Sonoco enrolled the entire Site in the SRP by submitting its Comprehensive Site Investigation Report, and that enrollment was approved by the IEPA, the remainder of the statutory requirements and implementing regulations became operative. Thus, even though its initial decision to participate in the SRP may have been voluntary, Sonoco is now required to follow all of the procedures and protocols

that are mandated by the SRP, which includes getting approval from the IEPA at each stage of the remediation process, in order to successfully complete its participation in the SRP and obtain a No Further Remediation letter. And just like in *DePue*, if Rockton is permitted to force Sonoco to forgo these procedures and instead immediately clean up the Site to Rockton's satisfaction under threat of a $750 per day *(and* per violation) penalty, it would frustrate the intent of the SRP. *See DePue*, 537 F.3d at 788.

A review of Rockton's response to Sonoco's motion to dismiss demonstrates the inherent conflict between Sonoco's participation in the SRP and Rockton's attempt to seek ongoing penalties for alleged ordinance violations. As the Seventh Circuit recognized in *DePue*, Illinois has enacted laws "to safeguard the environment and to restore contaminated areas through a phased and carefully considered process." *Id.* at 789. One method of achieving this goal is to allow owners of contaminated property to participate in the SRP and take advantage of a more flexible, risk-based approach to remediation. In contrast to this general policy of the State of Illinois that is expressed through its environmental statutes, Rockton admits in its response that it "does not seek to impose *any* program of restoration, protection or enhancement of the environment, at all." As a result, it is apparent that Rockton's intention in bringing these ordinance violations is in conflict with the purpose of the SRP, and local ordinances "that conflict with the spirit and purpose of a state statute are preempted by the statute." *Hawthorne*, 204 Ill.2d at 259, 274 Ill.Dec. 59, 790 N.E.2d 832.

In addition, Rockton's enforcement decisions in this case are also directly at odds with certain specific provisions of the SRP. In its memorandum in support of the motion to dismiss, Sonoco notes that Rockton's "ordinances contain no standards as to what level of contaminants constitute unsafe or unsanitary conditions." In response, Rockton asserts that it used the data contained in the IEPA's Brownfield Redevelopment Assessment "to guide its enforcement actions," and that it "chose to bring enforcement actions only for those contaminants that were at or above the Illinois EPA Tier 1 Corrective Action Objectives." Even putting aside the fact that this statement implies that Rockton could have brought enforcement actions for contaminants that were below the Tier 1 levels, this statement shows the conflict between Rockton's enforcement decisions and the remediation options available to Sonoco under the SRP. Under the SRP, part of Sonoco's Remedial Action Plan could include removing or otherwise mitigating the environmental contaminants found at the Site to a point that they are below the Tier 1 concentration levels, but that is not the only possible remediation method available to Sonoco under the flexible approach of the SRP. Instead of a Tier 1 objective, Sonoco could propose for the IEPA's approval of a Tier 2 remediation objective, which could provide for an alteration to the normal Tier 1 objectives based on site-specific data. *See* 415 ILCS 5/58.5(d)(2); *see also* 35 Ill. Admin. Code 742.600(a). Perhaps more likely than that, Sonoco could also propose Tier 3 remediation objectives, which "allow for different remediation objectives for residential and various categories of non-residential land uses," as well as consideration of additional site-specific data, such as "appropriate exposure factors for the current and currently planned future land use of the site and adjacent property and the effectiveness of engineering, institutional, or legal controls placed on the current or future use of the site." 415 ILCS 5/58.5(d)(3); *see also* 35 Ill. Admin. Code 742.900(a) ("Tier 3 sets forth a flexible framework to develop remediation objectives outside of the re-

quirements of Tiers 1 and 2."). Based on these different approaches, it is evident that Rockton's attempt to mandate a Tier 1 remediation objective through the use of its local ordinances under a threat of an ongoing $750 per day fine is in conflict with the flexible approach adopted by the State of Illinois as part of the SRP. Indeed, if Rockton's enforcement actions are not preempted, then it would be possible for Sonoco to successfully complete its participation in the SRP, receive a No Further Remediation letter from the IEPA, but *still* be in violation of the local ordinances and continue to accrue fines indefinitely. Such a scenario demonstrates why Rockton's environmental-based ordinance claims would frustrate the purpose of the SRP and are preempted. *See DePue,* 537 F.3d at 788–89.

In its response, Rockton argues that the district court's opinion in *Village of Roxana, Illinois v. Shell Oil Co.,* No. 12–577–GPM, 2013 WL 4510164 (S.D.Ill. Aug. 26, 2013), is "directly on point" and shows that its enforcement actions are not preempted. The court disagrees, however, as the circumstances in *Roxana* are distinguishable from the instant case in at least three ways. First, the ordinance violations at issue in *Roxana* were based on alleged contamination from the defendant's petroleum refinery that had migrated onto 230 separate properties located within the village, whereas the consent order that the defendant had entered into was directed only at a specific location where there had been a previous oil spill.

*Id.* at *1, *3. Thus, there was no conflict between the ordinance violations and the consent order because the ordinance violations sought to remedy contamination beyond the property covered by the consent order. In contrast, in the instant case, Rockton's enforcement actions and Sonoco's participation in the SRP both address the same environmental hazards currently found at the Site. Second, there was also a temporal distinction in *Roxana,* as the ordinance violations arose from emissions that occurred after the dates covered by the consent order. *Id.* at *3. Here, there is no temporal distinction between the alleged ordinance violations and the remediation process undertaken by Sonoco as part of the SRP. Finally, in *Roxana* the Court distinguished its case from the facts of *DePue,* noting that there was "no evidence of . . . a measured cleanup process" in the relevant consent order. *Id.* at *4. In this case, the SRP provides thorough regulations detailing each step of the remediation process, and Rockton's enforcement actions are in conflict with those provisions by threatening a significant penalty for each day the Site is not cleaned according to Rockton's standards. In addition to these distinctions, the court also notes that *DePue* is an opinion from the Seventh Circuit that this court is bound to follow, whereas *Roxana* is merely a non-binding district court opinion. For all these reasons, the court is not persuaded that *Roxana* dictates a different result in this case or otherwise demonstrates that the court should deviate from *DePue,* which is the more analogous case.[9]

9. Rockton also argues that the section of the Illinois Environmental Protection Act addressing the availability of injunctive and other relief contains an "express savings clause" which shows that municipal ordinances are not preempted by the Act. *See* 415 ILCS 5/45(a) (providing, in part, that "[n]o existing civil or criminal remedy for any wrongful action shall be excluded or impaired by this Act"). The court disagrees that this is a complete anti-preemption provision. Not only has Rockton not supported its assertion with any citation to case law, but accepting this argument would also infer that *DePue* was wrongly decided. Because this court is bound to follow Seventh Circuit precedent, the court rejects plaintiff's argument and concludes that a local ordinance could, under the appropriate circumstances, be preempted by the Illinois Environmental Protection Act.

Based on the foregoing, the court concludes that the environmental-based claims raised in the consolidated amended complaint are preempted by state law and grants Sonoco's motion as to these claims. Accordingly, Counts 2–8, 13–16, 19–27, 34–53, 56–57, 59–75, and 80–81 are dismissed.[10] The dismissal shall be with prejudice so long as Sonoco maintains its active participation in the SRP and ultimately obtains a No Further Remediation letter from the IEPA.

### B. Unjust Enrichment

Sonoco also argues that this court should dismiss Rockton's claim for unjust enrichment in Count 82 of the consolidated amended complaint. In that count, Rockton alleges that Sonoco has made "enormous profits from its operations" at the Site, and that Rockton has "suffered the adverse consequences of Defendant's pollution." In the complaint, Rockton further alleges that Sonoco "chose to maximize its own enrichment in lieu of protecting against damage it might cause or remediating damage it already caused." Based on these allegations, Rockton seeks an order from this court awarding "the equitable remedy of disgorgement of Defendant's unjust enrichment, in an amount in excess of $50,000, plus costs."

 "In Illinois, 'to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989)) (alteration omitted). The court agrees that Rockton has failed to state a proper claim for unjust enrichment.

▪ According to Rockton, Sonoco unjustly retained the benefit of increased profits by not spending some unknown amount of resources on preventing or remediating the environmental hazards that are present at the Site. However, in cases where a third party transferred a benefit to the defendant (i.e. Sonoco's customers paying for goods), "to show that the retention of the benefit constitutes unjust enrichment the plaintiffs must initially show that: (1) the benefit should have been given to the plaintiffs but the third party mistakenly gave it to the defendants; (2) the defendants procured it from the third party by some type of wrongful conduct; or (3) the plaintiffs for some reason have a better claim to the benefit than the defendants." *Nat'l Am. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 221 F.3d 1339, 2000 WL 975176, at *3 (7th Cir. July 11, 2000). Here, Rockton is unable to make any of those showings—there is no basis to believe that Sonoco's monetary profits should have been given to Rockton; there are no allegations that Sonoco procured its profits from its customers by some type of wrongful conduct; and there is no reason that Rockton would have a better claim to those profits than Sonoco. Accordingly, Rockton has not plausibly plead that Sonoco unjustly retained a benefit to the plaintiff's detriment and has not stated an equitable claim for unjust enrichment. Therefore, Sonoco's motion is granted as to Count 82.

### C. Attorney's Fees and Costs

 In its motion, Sonoco also argues that Rockton's request for attorneys fees and costs should be dismissed as a matter of law. "In general, the absence of a

---

10. Because the court concludes that Rockton's environmental-based claims are preempted, the court need not address Sonoco's alternative arguments for dismissal of those claims.

statute or an agreement of the parties precludes the recovery of attorney fees or the costs of litigation." *City of Naperville v. Lerch,* 198 Ill.App.3d 578, 583, 144 Ill. Dec. 668, 555 N.E.2d 1187 (1990) (citing *Hamer v. Kirk,* 64 Ill.2d 434, 437, 1 Ill.Dec. 336, 356 N.E.2d 524 (1976)). Rockton acknowledges this general rule but argues that it has been granted the authority by statute to seek attorney fees and costs pursuant to 65 ILCS 5/1–2–1. That section provides, among other things, the general authority for a municipality to pass ordinances and impose appropriate fines or penalties for violation of those ordinances. That section also includes the following paragraph:

> A default in the payment of a fine or penalty or any installment of a fine or penalty may be collected by any means authorized for the collection of monetary judgments. The municipal attorney of the municipality in which the fine or penalty was imposed may retain attorneys and private collection agents for the purpose of collecting any default in payment of any fine or penalty or installment of that fine or penalty. Any fees or costs incurred by the municipality with respect to attorneys or private collection agents retained by the municipal attorney under this Section shall be charged to the offender.

65 ILCS 5/1–2–1. Rockton argues that the final sentence of that paragraph authorizes them to collect any attorney fees that are incurred during the enforcement process of its ordinances, while Sonoco counters that this provision only allows for the recovery of attorneys fees and costs for collection actions.

■■■■■ "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature," and "[t]he best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning." *Landis v. Marc Realty, L.L.C.,* 235 Ill.2d 1, 6, 335 Ill.Dec. 581, 919 N.E.2d 300 (2009). Here, the plain meaning of the statute at issue is that a municipality can collect fees and costs incurred for attorneys and private collection agents who are retained for the purpose of collecting on a default in payment of a previously imposed fine or penalty. Indeed, attorneys are only mentioned in two sentences in 65 ILCS 5/1–2–1—the first sentence authorizes the municipal attorney to "retain attorneys and private collection agents for the purpose of collecting any default in payment of any fine or penalty," and the very next sentence authorizes imposing on the offender "[a]ny fees or costs incurred by the municipality with respect to attorneys or private collection agents retained by the municipal attorney." 65 ILCS 5/1–2–1. Rockton tries to make much out of the phrase, "under this Section," in an effort to expand the scope of its authority to collect fees, but nowhere in section 1–2–1 is the municipality authorized to retain outside attorneys for the purpose of enforcing its ordinances. Thus, the only authorization under section 1–2–1 for a municipality to retain attorneys is for purposes of collecting any default of a previously imposed fine or penalty, and, consequently, the only authorization for a municipality to charge attorneys fees to the offender is when those fees are incurred as part of a collection action. Accordingly, the court agrees that Rockton's request for attorneys fees and costs is improper in this case and grants Sonoco's motion as to that portion of the prayer for relief.

### D. Retroactive Fines [11]

Finally, Sonoco argues that Rockton has violated its due process rights by seeking

---

**11.** It is not clear that the term "retroactive fines" is the most accurate description for

"enormous, retroactive fines" of $750 per day for each of the alleged ordinance violations starting from December 2, 2007. Sonoco contends that these ordinances, on their face, did not provide adequate notice that the presence of environmental contaminants at the Site would constitute a violation. Accordingly, Sonoco moves to dismiss all claims to the extent they allege ordinance violations which occurred prior to September 9, 2014, the date it first received notice from Rockton of the alleged violations.

Given the other rulings contained in this order, the only remaining claims are those based on the physical conditions or characteristics of the Site, such as stagnant water or broken windows. Although Sonoco argues that Rockton's general ordinances did not provide sufficient notice of the possible environmental-based claims, there is no similar lack-of-notice argument made with respect to these claims. Moreover, even though it is unclear whether Rockton ultimately will be able to prove that these conditions existed from December 2007 and beyond, the court must accept as true all well-pleaded factual allegations at this stage of the proceeding. Accordingly, the motion to dismiss Rockton's claims for ordinance violations which occurred prior to September 9, 2014, is denied without prejudice to raising this argument again at a later date, if necessary.

### III. CONCLUSION

Based on the foregoing, Sonoco's motion for judgment on the pleadings is granted in part, and denied in part. Counts 2–8, 13–16, 19–27, 34–53, 56–57, 59–75, and 80–82 of the consolidated amended complaint are dismissed, and Rockton's claim for attorneys fees and costs is stricken. All other claims remaining pending, and the

Sonoco's claim given that the relevant ordinances were first passed in 1957, prior to Sonoco's purchase of the Site. Nevertheless,

parties should contact the Magistrate Judge for all further pretrial proceedings.

for the sake of consistency with the parties' briefing, the court will also use this term.