In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-2542

DARRYL PIERCE and SHARON PIERCE, on behalf of themselves and a class,

*Plaintiffs-Appellants*,

*v.*

VISTEON CORPORATION and VISTEON SYSTEMS, LLC,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:05-cv-1325-LJM-DKL — **Larry J. McKinney**, *Judge*.

———————————

ARGUED JUNE 5, 2015 — DECIDED JULY 1, 2015

———————————

Before WOOD, *Chief Judge*, and FLAUM and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Federal law requires employers to offer laid off or discharged workers an opportunity to continue health insurance (including dental and vision benefits) at their own expense. This is called COBRA coverage, after the Consolidated Omnibus Budget Reconciliation Act of 1985. An employer has 44 days after the end of a per-

son's employment to provide notice and essential details. 29 U.S.C. §1166(a)(2), (a)(4), (c). The penalty for delay can be as high as $110 a day. (The statute says $100, see 29 U.S.C. §1132(c)(1), but the Department of Labor has raised the cap to $110. 29 C.F.R. §2575.502c-1. Visteon has not questioned the validity of this regulation, and we do not consider whether the Secretary was authorized to adopt it.)

Plaintiffs in this suit, which the district court certified as a class action, contend that Visteon Corp. failed to deliver timely notice to some of its ex-employees. The district court defined the class in a way that contains 1,593 persons. After a bench trial, the court found that Visteon had provided untimely notice to 741 of these former employees, and that the notice averaged 376 days late for those 741 persons (though most of the other class members had received timely notice). The court awarded $2,500 to each class member who had received untimely notice (a total of about $1.85 million), a sum that does not depend on how long the delay was for any given person. 2013 U.S. Dist. LEXIS 88817 (S.D. Ind. June 25, 2013). While the suit was pending, Visteon was reorganized in bankruptcy. The plan provides that debts of this kind will be paid 50¢ on the dollar, so each of the 741 will receive $1,250. The court also ordered Visteon to pay class counsel $302,780 as attorneys' fees under 29 U.S.C. §1132(g), plus costs of about $11,000. 2014 U.S. Dist. LEXIS 31107 (S.D. Ind. Mar. 11, 2014).

The class filed a notice of appeal on July 11, 2014, and contends that the penalties are too low, the class too small, and the attorneys' fees too modest. The notice of appeal is timely with respect to the award of fees, because the class had filed a timely motion for modification under Fed. R. Civ.

P. 59, which suspended the decision's finality. See Fed. R. App. P. 4(a)(4). The district court denied that motion on June 11, 2014, and the notice of appeal came 30 days later. But Visteon contends that the notice is not timely with respect to the decision on the merits, for the merits and awards of fees are separate subjects, independently appealable. *Ray Haluch Gravel Co. v. Central Pension Fund*, 134 S. Ct. 773 (2014); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988).

The district judge resolved the merits on June 25, 2013, and Fed. R. Civ. P. 58(b)(2) provides that a court "must promptly enter" a judgment. The district court did not comply with that requirement. Appellate Rule 4(a)(7)(A)(ii) lays out what happens in this situation: 150 days after the date of the district court's decision, a judgment is deemed to be entered and the 30 days for appeal (60 if the United States is a party) starts to run. The total of 180 or 210 days gives litigants ample opportunity to protect their interests even when the district court neglects its paperwork. For this case, the 150th day was November 22, 2013. That gave the class until December 23, 2013, to file a notice of appeal, but none was filed until July 2014. (December 22, 2013, was a Sunday.)

There is one exception to the rule that decisions on the merits and decisions about attorneys' fees are separately appealable. Rule 58(e) provides:

> Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

Invoking Rule 58(e), plaintiffs asked the district court to order that their motion for attorneys' fees have the same effect as a Rule 59 motion, which under Appellate Rule 4(a)(4) would defer the time for appeal on the merits until the dispute about attorneys' fees had been resolved. But on November 26, 2013, the district judge denied that motion, calling it unnecessary. Twenty-seven days remained for appeal, but nothing happened. The deadline for appeals in civil cases is jurisdictional, see *Bowles v. Russell*, 551 U.S. 205 (2007), so plaintiffs' inaction has put the district court's merits decision beyond the scope of appellate review.

Plaintiffs maintain that it should matter why the district court denied the motion. Plaintiffs' lawyer insists that statements the district judge made contemporaneous with his order of November 26 led counsel to think that the judge deemed the motion to be otiose. As counsel understood what the judge said, the judge believed that, because he had decided not to comply with Rule 58(b)(2), it was unnecessary to jump through the hoop created by Rule 58(e). We assume, without needing to decide, that counsel has deciphered the judge's thinking correctly. Still, what this principally shows is that the judge did not know about Appellate Rule 4(a)(7) (apparently no one had called it to his attention) and therefore did not appreciate the danger that plaintiffs were in if he did not grant the Rule 58(e) motion and their lawyers failed to appeal by December 23. We may suppose that plaintiffs' lawyers were equally oblivious to the fact that a 180-day clock had been running since June 25. But that is how Rule 4(a)(7) works, whether it is understood or not.

Until Rule 4(a)(7) was amended in 2002, litigants were protected by the doctrine of *United States v. Indrelunas*, 411

U.S. 216 (1973), which held that the losing side could wait forever, if that was how long a district court took to enter a Rule 58 judgment. The rulemaking committees, the Judicial Conference, and ultimately the Supreme Court (which promulgates changes to the rules) concluded that "forever" is too long and set a 150-day limit. The interaction of that outer bound with the jurisdictional holding of *Bowles*, together with the failure of class counsel to act in the 27 days that remained available, leads to the class's problem.

When denying the Rule 58(e) motion, the district judge did not assure the parties that they were safe in waiting until he acted on the request for attorneys' fees. Counsel just drew that inference. But suppose the judge had said so, point blank. Until *Bowles* that assurance would have protected the class under *Thompson v. INS*, 375 U.S. 384 (1964), and *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962). As restated in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179 (1989), these decisions establish that, if "a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done", then the deadline for appeal is indeed postponed. This came to be called the "unique circumstances doctrine." But *Bowles* deemed the unique circumstances doctrine incompatible with the nature of a jurisdictional time limit, which does not allow equitable exceptions, and it overruled that line of decisions. 551 U.S. at 213–15.

The class would have been in trouble even under *Osterneck*, since the judge did not provide "specific assurance" that it was safe in waiting to appeal. But after *Bowles* there's just no way out of the predicament caused by counsel's in-

explicable omission—inexplicable because, even if the class did not absolutely need to appeal by December 23, there was no harm in filing a protective appeal, just in case. Taking precautions is a big part of a lawyer's job.

At oral argument we asked counsel whether Fed. R. Civ. P. 23(c)(3) might have postponed the time for appeal, and after argument we called for supplemental memoranda to address that possibility. This rule provides:

> *Judgment.* Whether or not favorable to the class, the judgment in a class action must:
>
> > (A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and
> >
> > (B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

We were interested in two things: whether these loose ends had been tied up, and, if not, whether the omissions affected the finality of the June 25 decision, as opposed to providing a ground to reverse it. Our briefing order directs counsel to address "how Federal Rule of Civil Procedure 23(c)(3) interacts with Rule 58 in class action cases."

Ronald E. Weldy, representing the class, ignored our question. His post-argument memorandum does not mention Rule 23(c)(3). Visteon's lawyers, by contrast, addressed the issue with care. This class was certified under Rule 23(b)(3), so Rule 23(c)(3)(B) applies. Visteon's counsel observed that the class was formally defined in 2006, that all members were notified in October 2007, and that none had opted out. The district court's opinion of June 2013 mentions

all of this; so do earlier orders. Visteon added that, shortly before trial, the parties filed a stipulation listing every member of the class by name, and the district court specified which 741 members of the class are entitled to a monetary award. Rule 23(c)(3)(B) has been satisfied. It follows that the class's time to appeal the decision on the merits ran out on December 23, 2013, and the appeal filed in July 2014 is limited to the amount of attorney's fees.

Section 1132(g)(1), a part of ERISA applicable to COBRA cases, authorizes a district court to award "a reasonable attorney's fee" when circumstances warrant. See *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010). The district court awarded Weldy almost $303,000. He does not contend that this is too low, as §1132(g)(1) uses the word "reasonable." Instead he asks us to put ERISA to one side and hold that he is entitled, in addition to $303,000 from Visteon, to a supplemental award from the class. His position on appeal thus is directly adverse to his clients. As far as we can see, he has not notified them and given them an opportunity to hire new counsel to protect their interests. We'll come back to this problem shortly.

Weldy maintains that the district court should have treated this as a "common fund" case in which, having generated a pot of money for the class, counsel can dip into the pot to supplement his statutory compensation, just as if this were a tort suit and the client had agreed to pay a contingent fee. Many decisions permit an award from the fund in class actions, despite the absence of a contingent-fee contract between counsel and the class, when a portion of the class's recovery is the only available source of fees. See, e.g., *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). But this case was

litigated under a fee-shifting statute, and we do not see a good reason why, in the absence of a contract, counsel should be entitled to money from the class on top of or in lieu of payment by the losing litigant. We suggested in *Evans v. Evanston*, 941 F.2d 473, 479 (7th Cir. 1991), that clients should not be ordered to pay counsel who are compensated under a fee-shifting statute; today that suggestion becomes a holding.

Three principal reasons justify limiting the common-fund approach to cases outside the scope of a fee-shifting statute.

First, the common-fund doctrine is part of the common law, devised by courts as a matter of necessity when there was no other way to compensate the lawyers for work that bestowed a substantial benefit on the class. Common-law doctrines yield to statutes. See, e.g., *American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527 (2011). The fee-shifting provision in ERISA is a statutory replacement for the common law.

Second, fee-shifting statutes are designed to ensure that the victims retain full compensation, while the wrongdoer pays the lawyers. That interest would be disserved by transferring some of the class's money to its lawyer in lieu of, or on top of, the award under the fee-shifting statute.

Third, §1132(g)(1), like most other fee-shifting statutes, provides for the award of a "reasonable" fee, which the district judge fixed at $303,000. Weldy does not contest this aspect of the judge's decision. If Weldy were to pocket substantially more than that, his compensation would by definition be unreasonably high. It would be a misuse of the judi-

cial power to award a lawyer an unreasonably high fee just because funds are available to be tapped.

A slightly different way to make the point is this. The Supreme Court has held that, in calculating a reasonable fee under a fee-shifting statute, a district court should not include a multiplier that will effectively compensate counsel for the risk of loss. *Burlington v. Dague*, 505 U.S. 557 (1992). A common-fund award, like a contingent-fee contract, often builds in a multiplier in the cases where counsel prevails. Adding a common-fund award to a statutory "reasonable" fee would undercut if not countermand *Dague* and similar decisions.

Finally, even if it were sometimes appropriate to give a lawyer a slice of the class's recovery on top of a fee-shifting award, this would not be the case to do it in. We've mentioned two reasons: Weldy bungled the appeal, costing the class an opportunity to seek greater compensation, and his demand for fees from the class goes directly against his clients' interests, yet he did nothing to help them protect themselves. And this isn't the only respect in which Weldy has tried to undermine his client's interests. The lead argument in his brief is—that some members of the class will get *too much* money! Yes, Weldy asked us to remand because some of his clients have been overcompensated. Perhaps they have been: $2,500 is more than $110 a day for anyone whose notice was less than 23 days late. That might have been a reason for Visteon to appeal, but it is unfathomable that the class's lawyer would try to sabotage the recovery of some of his own clients.

That's not all. We have mentioned Weldy's failure to comply with our order to address the interaction between

Rule 23(c)(3) and Rule 58. And his brief on the merits has problems beyond those pointed out already. It presents 13 issues for decision, violating the principle that appellate counsel must concentrate attention on the best issues. (To brief more than three or four issues not only diverts the judges' attention but also means that none of the issues will be addressed in the necessary depth; an appellate brief covering 13 issues can spend only a few pages on each.) The brief's writing is careless to boot; it conveys the impression of "dictated but not read." Here are two sentences: "This Court should be entered a high daily statutory penalty in this matter. Respectfully, the award of the District Court to the contrary law and an abuse of discretion." There's more, equally ungrammatical. Weldy is in no position to contend that his compensation is too low.

The appeal is limited to the award of attorneys' fees, which is

AFFIRMED.