# Illinois Official Reports

## Appellate Court

---

### *Johnson v. Municipal Employees', Officers' & Officials' Annuity & Benefit Fund*, 2018 IL App (1st) 170732

---

| | |
|---|---|
| Appellate Court Caption | JEFFREY JOHNSON, ROBERT ORLICH, TERRY T. WHITE, FRANK T. LOWERY, and MUNICIPAL EMPLOYEES SOCIETY, as Associational Representatives for Its Members, Plaintiffs-Appellants, v. THE MUNICIPAL EMPLOYEES', OFFICERS' AND OFFICIALS' ANNUITY AND BENEFIT FUND OF CHICAGO and THE LABORERS' AND RETIREMENT BOARD EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO, Defendants-Appellees (The City of Chicago, Intervenor-Appellee). |
| District & No. | First District, Second Division<br>Docket No. 1-17-0732 |
| Filed<br>Modified upon<br>denial of rehearing | December 26, 2018<br><br>February 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-20668; the Hon. Rodolfo Garcia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Mary Patricia Burns and Vincent D. Pinelli, of Burke Burns & Pinelli, Ltd., of Chicago, for appellee Municipal Employees', Officers' and Officials' Annuity and Benefit Fund of Chicago. |

John F. Kennedy, Cary E. Donham, and Graham C. Grady, of Taft Stettinius & Hollister LLP, of Chicago, for appellee Laborers' and Retirement Board Employees' Annuity and Benefit Fund of Chicago.

Michael D. Freeborn, John T. Shapiro, and Dylan Smith, of Freeborn & Peters LLP, of Chicago, for other appellees.

Edward N. Siskel, Corporation Counsel (Benna Ruth Solomon and Jane Elinor Notz, Assistant Corporation Counsel, of counsel), Michael B. Slade, R. Chris Heck, and Douglas Smith, of Kirkland & Ellis LLP, and Richard Prendergast and Michael Layden, of Richard J. Prendergast, Ltd., all of Chicago, for intervenor-appellee City of Chicago.

Panel                JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Mason and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1      After the Illinois Supreme Court ruled that Illinois Pension Code amendments violated our constitution's pension protection clause, plaintiffs' counsel in one of the consolidated cases petitioned for attorney fees. The firm sought over $200,000 under the Illinois Civil Rights Act and an additional $750,000 from a "common fund." The trial court denied the fee petition in its entirety as impermissible under the Illinois Pension Code. We agree and affirm.

¶ 2                                      Background

¶ 3      As summarized in *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, Illinois has established public pension systems for public employees of the City of Chicago, including the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund (MEABF) (40 ILCS 5/8-101 *et seq.* (West 2012)), and the Laborers' and Retirement Board Employees' Annuity and Benefit Fund (LABF) (40 ILCS 5/11-101 *et seq.* (West 2012)). *Jones*, 2016 IL 119618, ¶ 3. The benefits under MEABF and LABF come from three sources: the City, the employees, and investment returns. *Id.* ¶ 6. Historically, the public pensions have been underfunded. *Id.* ¶ 7. Uncertainty associated with deficiencies led to the adoption of the pension protection clause in the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). Actuarial valuation of the funds continued to show serious shortfalls, however. *Jones*, 2016 IL 119618, ¶ 10.

¶ 4      The General Assembly adopted legislative strategies to deal with some of the underfunded pensions. Public Act 98-641, passed in 2014, consisted of a comprehensive set of provisions designed to reduce annuity benefits for MEABF and LABF members. *Id.* ¶ 18.

- 2 -

¶ 5        After Public Act 98-641 became law, MEABF participants challenged its constitutionality and sought to enjoin enforcement: Jones v. Municipal Employees', Officers' & Officials' Annuity & Benefit Fund, No. 2014-CH-20027 (Cir. Ct. Cook County) (Jones v. MEABF), and Johnson v. Municipal Employees', Officers' & Officials' Annuity & Benefit Fund, No. 2014-CH-20668 (Cir. Ct. Cook County) (Johnson v. MEABF). Both complaints sought a declaration that Public Act 98-641 violated the pension protection clause by diminishing pension benefits of the fund's participants.

¶ 6        The Jones v. MEABF plaintiffs included 14 individual participants in the MEABF, including current employees and retirees receiving an annuity, and four labor unions whose members participated in the MEABF. The defendants included MEABF and its board of trustees. The law firm of Freeborn & Peters LLP represented the plaintiffs. Ten days later, Krislov & Associates, Ltd. filed the Johnson v. MEABF lawsuit on behalf of one current participant in the MEABF, three retired participants receiving annuities from the LABF, and the Municipal Employees Society of Chicago. The defendants included MEABF and LABF. The City of Chicago and the State intervened, and the cases were consolidated. Ultimately, the parties filed cross-motions for summary judgment, with the State adopting the City's motion.

¶ 7        The trial court declared that Public Act 98-641, by reducing the value of annual annuity increases, violated the constitution's pension protection clause. The City, the State, MEABF, and LABF appealed directly to the Illinois Supreme Court under Rule 302(a). Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011). In March 2016, the supreme court affirmed, declaring the entire statute unconstitutional. *Jones*, 2016 IL 119618, ¶ 61.

¶ 8        Krislov, the Johnson v. MEABF plaintiffs' counsel, petitioned for attorney fees against the City, MEABF, and LABF under the Civil Rights Act (740 ILCS 23/5(c) (West 2016)) in the amount of $219,041 representing the firm's statutory lodestar fee. In addition, under a common fund theory, Krislov sought an additional $750,000 from the 3% annual annuity increase for plan members.

¶ 9        Deciding as a matter of law that attorney fees were not available under either approach, the trial court denied with prejudice Krislov's petition, as well as a motion for class certification and a motion to compel production of his opponents' time records. Krislov requests that we reverse and remand with directions to award an appropriate fee, considering both statutory lodestar and common fund sources. Krislov also requests we order production of the time records and certification of a class for purposes of applying the common fund doctrine.

¶ 10                                      Standard of Review

¶ 11       This appeal presents a matter of statutory interpretation, a question of law, which we review *de novo*. *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 13.

¶ 12                                          Analysis

¶ 13                                       Fee Entitlement

¶ 14       The Illinois Civil Rights Act of 2003 (Civil Rights Act) prohibits discrimination based on a person's race, color, national origin, or gender. 740 ILCS 23/5(a) (West 2016). Subsection (b) empowers an aggrieved party to bring a civil lawsuit in federal district or state circuit court "against the offending unit of government." *Id.* § 5(b). Together, subsections 5(a) and 5(b) create a state statutory cause of action for a claim of discrimination based on a suspect class.

- 3 -

¶ 15        The Civil Rights Act includes a provision for attorney fees: "Upon motion, a court shall award reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in any action brought: (1) pursuant to subsection (b); or (2) to enforce a right arising under the Illinois Constitution." *Id.* § 5(c). This language recognizes attorney fees when a prevailing party successfully brings a discrimination claim on statutory or constitutional grounds. *Thomann v. Department of State Police*, 2016 IL App (4th) 150936, ¶ 30.

¶ 16        The trial court denied attorney fees because the issues raised by the lawsuits have no relation or connection to the Civil Rights Act. We agree.

¶ 17        Krislov argues *Grey v. Hasbrouck*, 2015 IL App (1st) 130267, controls. *Grey* has no bearing. *Grey* involved whether the doctrine of sovereign immunity barred attorney fees. *Id.* ¶ 1. In *Grey*, unlike here, the claim, which involved transgender individuals, fell squarely within section 5(a). *Id.* ¶¶ 2-3, 20.

¶ 18        We also reject Krislov's quarrel with *Thomann*, 2016 IL App (4th) 150936. Krislov criticizes *Thomann*'s narrow interpretation of section 5(c) to restrict attorney fees to discrimination claims based on either section 5(a)(1) or 5(a)(2) or "race, color, national origin, or gender" under the Illinois Constitution's equal protection clause (Ill. Const. 1970, art. I, § 2). *Thomann*, 2016 IL App (4th) 150936, ¶¶ 29-30; see also 740 ILCS 23/5(a), (c) (West 2016). Section 5(c) makes attorney fees available "only where the claimant is a prevailing party on a discrimination claim against a governmental body involving one or more of the identified suspect classes." *Thomann*, 2016 IL App (4th) 150936, ¶ 29. In *Thomann*, plaintiffs did not bring a discrimination claim against a governmental body. *Id.* ¶ 33. Nor have the Johnson v. MEABF plaintiffs.

¶ 19        Nevertheless, Krislov insists that the text of section 5(c)(2)—"to enforce a right arising under the Illinois Constitution" (740 ILCS 23/5(c)(2) (West 2016))—opens the way for fees regardless of the nature of the claim as long as it arises under the Illinois Constitution. Krislov characterizes the language as unambiguous and insists it should be interpreted liberally.

¶ 20        A cardinal rule of statutory construction requires that courts ascertain and give effect to the legislature's intent, with the plain language offering the best indication of intent. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009). In doing so, we read the statute as a whole, considering all relevant parts. *First American Bank Corp. v. Henry*, 239 Ill. 2d 511, 516 (2011) (citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)). Also, statutes must be construed to avoid incorporating exceptions, limitations, or conditions contrary to the legislative intent. *Thomann*, 2016 IL App (4th) 150936, ¶ 30. Krislov's argument runs afoul of these tenets.

¶ 21        *Thomann* got it right in finding an expansive interpretation of the section 5(c)(2) fee-shifting provision as contrary to the statutory scheme, and refusing to apply the section to a prevailing party of any claim arising under the Illinois Constitution, regardless of subject matter or context. In *Thomann*, plaintiffs alleged the procedures in evaluating objections to concealed carry license applications violated their due process rights under the Illinois Constitution. *Id.* ¶ 4. After the dismissal of the complaint as moot, plaintiffs' attorneys petitioned for fees, asserting that section 5(c) of the Civil Rights Act entitled them to fees because they prevailed in a suit " 'to enforce a right arising under the Illinois Constitution.' " *Id.* ¶ 11 (quoting 740 ILCS 23/5(c)(2) (West 2014)). The sole issue was whether the trial court

erroneously dismissed the plaintiffs' attorney fee petition. *Id.* ¶ 1. The trial court was affirmed. *Id.* ¶ 33.

¶ 22 Krislov asserts that the Civil Rights Act's first two subsections "say nothing to suggest *the Act as a whole* does not extend beyond the context of discrimination." (Emphasis in original.) But the absence of any language limiting fees to discrimination claims proves nothing as well. Indeed, Krislov's approach puts an unstated and unwritten consequence into unambiguous language.

¶ 23 Accordingly, the Civil Rights Act cannot serve as a means for awarding attorney fees, as plaintiffs in Jones v. MEABF were not aggrieved parties suing under the Illinois Constitution on the subject of discrimination based on race, color, national origin, or gender.

¶ 24                                   Statutory Exemption

¶ 25 Illinois follows the "American Rule." That rule makes each party bear its own attorney fees and costs unless statutory authority or a contractual agreement says otherwise. *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1038-39 (2009). Courts strictly construe statutes in derogation of the common law that authorize fee awards, and "[n]othing is to be read into such statutes by intendment or implication." *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 18. So Krislov looks to the Illinois Pension Code.

¶ 26 The Pension Code, however, exempts retirement annuities from attachment for the payment of any debt of an annuitant, which includes attorney fees. See 40 ILCS 5/1-101 *et seq.* (West 2016). Article 8 of the Illinois Pension Code applies to annuities due MEABF members. See *id.* § 8-244(a). Section 8-244(a) exempts annuities, refunds, pensions, and disability benefits from attachment or garnishment to pay any debt, damage, claim demand, or judgment against any annuitant, pensioner, participant, refund applicant, or other beneficiary. *Id.* The legislature did not include an exception for attorney fees.

¶ 27 Article 11 of the Illinois Pension Code applies to LABF members' annuities. See *id.* § 11-223(a). Section 11-223(a) mirrors the language in section 8: "[a]ll annuities, refunds, pensions, and disability benefits granted under this Article shall be exempt from attachment or garnishment process and shall not be seized, taken, subjected to, detained, or levied upon by virtue of any judgment, or any process or proceeding whatsoever issued out of or by any court in this State, for the payment and satisfaction in whole or in part of any debt, damage, claim, demand, or judgment against any annuitant, participant, refund applicant, or other beneficiary hereunder." *Id.* Again, there is no exception for attorney fees.

¶ 28 The Illinois Supreme Court recently considered the constitutionality of changes to the Pension Code in *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund of Chicago*, 2018 IL 122793. The court reiterated that questions on legislative intent and clarity of the language in a pension statute be "liberally construed in favor of the rights of the pensioner" (*id.* ¶ 24 (citing *Kanerva v. Weems*, 2014 IL 115811, ¶ 55)), and that pension benefits " ' "cannot be diminished or impaired" ' " (*id.* ¶ 25 (quoting *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 45, quoting *Kanerva*, 2014 IL 115811, ¶ 38)). Accordingly, the statute bars garnishing the plan participants' pension entitlements for any purpose.

## Common Fund

¶ 30    Courts have general equity power "to do equity in a particular situation." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939). The common fund doctrine touches the power of equity in doing justice between a party and the beneficiaries of the litigation. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 575 (2000). But, under the disposition here, counsel's efforts did not create a common fund or a quantifiable pool of money from which fees could be paid.

¶ 31    Krislov proposes creating a common fund through deductions from the amounts paid to beneficiaries from the pension funds under the jurisdiction of the court (the 3% annual increases) from LABF or MEABF members' annuities. In his reply, Krislov suggests a common fund exists "because the annuitants have received and will continue to receive actual increases in monetary payment, thus, there is a fund," and maintains the City cited factually distinguishable cases. While that may be, the cases do not support Krislov's position either.

¶ 32    Each of the cases involves future savings, and none created a common fund. In *Hamer v. Kirk*, 64 Ill. 2d 434, 438-40 (1976), the supreme court found future savings for taxpayers and refunds for paid taxes did not constitute a "fund" from which attorney fees could be paid. Similarly, in *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority*, 51 Ill. 2d 126, 130 (1972), our supreme court deemed it "improper" to expand the recognized rule for the payment of attorney fees in a typical class action to litigation seeking a declaratory judgment on the constitutionality of a statute. Finally, the supreme court in *Hoffman v. Lehnhausen*, 48 Ill. 2d 323, 329 (1971), stated, "We are aware of no authority under which the process of tax collection and distribution could have been interrupted to divert from the governmental bodies that had levied the taxes an amount fixed by the court as fees for the attorneys for the plaintiffs."

¶ 33    Krislov wants us to follow cases involving the Employment Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (1994)), citing *Bishop v. Burgard*, 198 Ill. 2d 495 (2002), as allowing attorney fees. But *Bishop* is inapposite both factually and legally. *Bishop* was a personal injury lawsuit for a car accident. *Bishop*, 198 Ill. 2d at 497. The plaintiff retained an attorney, agreeing to pay a one-third percentage of her recovery as attorney fees and costs. After the attorney procured a recovery, plaintiff's employer's ERISA plan filed a lien against the proceeds for the medical expenses it had paid. *Id.* The ERISA plan agreement provided for subrogation rights to recover 100% of the benefits paid to the extent of any judgment or settlement. *Id.* at 498-99. The validity and amount of the lien were not in dispute, but the ERISA plan refused to reduce its lien by one-third to reflect the attorneys' claim for fees. *Id.* at 497. Ultimately, the supreme court concluded that ERISA did not preempt application of the common fund doctrine in this context and under these facts. *Id.* at 507. Unlike in *Bishop*, there is no subrogation agreement here, and Krislov proposes taking money directly from the members' pension checks, which our supreme court has repeatedly rebuffed.

## Double Recovery

¶ 35    Although we need not decide the appropriateness of a double recovery of fees, we would be remiss not to mention Krislov's desire for an award of both statutory fees and common fund fees, not one or the other. Krislov has asked for statutory fees in excess of $200,000 under the "fee-shifting" provision of the Civil Rights Act, section 5(c), along with $750,000 under the "common fund" doctrine. Defendants label this a double recovery.

¶ 36    Krislov cites no basis for this request. See *Pierce v. Visteon Corp.*, 791 F.3d 782, 787-88 (7th Cir. 2015) (attorney not entitled to attorney fees from class's common fund as well as under fee-shifting statute); *Evans v. City of Evanston*, 941 F.2d 473, 479 (7th Cir. 1991) (clients should not be ordered to pay counsel who are compensated under fee-shifting statute). Also, even had fees been obtainable, Krislov leaves unexplained why recovery of "reasonable attorneys' fees" under section 5(c) wouldn't have afforded sufficient compensation alone.

¶ 37    Given our resolution, we need not address the remaining issues asserted by Krislov.

¶ 38    Affirmed.