NOTICE

Decision filed 04/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240701

NO. 5-24-0701

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SUSAN BARUXEN and MATTHEW WILSON, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22-LA-6 |
| GREGORY HACKER, in His Official Capacity as Chief of Firearms Service Bureau, and MICHAEL W. FRERICHS, in His Official Capacity as Treasurer of the State of Illinois, | ) ) ) ) ) ) | |
| | ) ) | Honorable Christopher T. Kolker, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice McHaney and Justice Sholar concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiffs, Susan Baruxen and Matthew Wilson, appeal[1] from the circuit court's order dismissing their complaint and denying their petition for attorney fees and costs. The issue before this court is whether the circuit court erred in denying plaintiffs' petition for attorney fees and costs. For the following reasons, we affirm.

---

[1]The record on appeal comprises a single volume of common-law record, for which we have gleaned the following facts and procedural history.

1

¶ 2                                    I. BACKGROUND

¶ 3    In 2013, the Illinois General Assembly enacted the Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/1 *et seq.* (West 2022)). The Concealed Carry Act allows qualified individuals to obtain a license to carry concealed handguns in public. As a part of the application and renewal process, the Concealed Carry Act requires applicants and licensees to pay a fee. *Id.* § 60. For residents of Illinois, the State charges a $150 licensure fee, of which $120 is to be apportioned to the State Police Firearm Services Fund, $20 is to be apportioned to the Mental Health Reporting Fund, and $10 is to be apportioned to the State Crime Laboratory Fund. *Id.* § 60(b). For out-of-state residents, the State charges a $300 licensure fee, of which $250 is to be apportioned to the State Police Firearm Services Fund, $40 is to be apportioned to the Mental Health Reporting Fund, and $10 is to be apportioned to the State Crime Laboratory Fund. *Id.* § 60(c).

¶ 4    On January 4, 2022, plaintiffs filed a complaint against defendants Gregory Hacker, in his official capacity as Chief of the Firearms Service Bureau, and Michael Frerichs, in his official capacity as Treasurer of the State of Illinois. In their complaint, plaintiffs alleged that they were charged a license renewal fee pursuant to section 60 of the Concealed Carry Act and additionally charged a 2.25% surcharge that was not authorized pursuant to section 60 nor disclosed. As a result of the 2.25% surcharge, the complaint alleged the defendants wrongfully collected more than $50,000. Plaintiffs sought relief in excess of $50,000, certification of the putative class, preliminary and permanent injunctions preventing the defendants from charging more than statutorily authorized, and attorney fees and costs under the Illinois Civil Rights Act of 2003 (Civil Rights Act) (740 ILCS 23/1 *et seq.* (West 2022)).

¶ 5    On March 24, 2023, defendants filed a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2022)). Defendants' motion to dismiss was accompanied by a memorandum in support, which alleged, *inter alia*, that the plaintiffs' complaint failed to state a cause of action under the Civil Rights Act. Additionally, defendants argued in their supporting memorandum that the complaint should be dismissed as moot because applicants for new or renewed concealed carry licenses were no longer required to pay the 2.25% surcharge.

¶ 6    On March 27, 2023, plaintiffs filed a petition for attorney fees and costs pursuant to the Civil Rights Act. Plaintiffs asserted, *inter alia*, that section 5(c)(2) of the Civil Rights Act (740 ILCS 23/5(c)(2) (West 2022)) "provides for costs and attorney fees, under any claim under the Illinois constitution, including under the catalyst theory." Plaintiffs asserted that their lawsuit acted as a catalyst, prompting defendants to cease violating the constitutional rights of individuals applying for or renewing concealed carry licenses as specified in section 60 of the Concealed Carry Act. The petition included a detailed explanation of the attorney fees and costs incurred, which totaled $6,006. Attached to the petition were photocopies of the Civil Rights Act and its legislative history, including a highlighted excerpt from the Senate debate transcripts.

¶ 7    On July 31, 2023, defendants filed a response to plaintiffs' petition for attorney fees and costs. In their response, defendants argued that plaintiffs' claim for attorney fees and costs was without merit because they did not bring a claim pursuant to the Civil Rights Act and therefore could not recover damages. Defendants further argued that, even if the plaintiffs had brought a claim under the Civil Rights Act, their claim would still fail because their complaint did not allege or show discrimination based on race, color, national origin, or gender by the State. Further, defendants argued that, even if plaintiffs' complaint were to survive dismissal, the plaintiffs would

not be entitled to recover damages under the Civil Rights Act's catalyst theory because they did not include a claim based on the Illinois Constitution in their complaint. Defendants emphasized that, even if such a claim had been included, section 5(c) of the Civil Rights Act applied only to cases where a claimant who was also a prevailing party alleged or showed discrimination based on race, color, national origin, or gender.

¶ 8 On August 4, 2023, plaintiffs filed a supplemental fee petition, indicating that it was "in addition to the prior fee petition for time expended." Accompanying the supplemental fee petition was an affidavit detailing 1.9 hours of work and a court order dated March 17, 2015, from an unrelated case, which approved an hourly rate of $300.

¶ 9 On June 3, 2024, the circuit court issued a written order stating the following:

> "Before Court on Status, motion to dismiss and Petition for cost and fees, Court grants the motion to dismiss, over objection, on the basis of mootness, as the record indicates Defendant ceased making the contested charges shortly after the suit was filed.
>
> Request for fees and costs, in Petition for fees and costs, is denied, as despite this case caused Defendant to cease making charges, per Appellate case law the Civil Rights Act of 2003 does not provide for cost and fees in this kind of case."

This timely appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11 On appeal, plaintiffs raise the issue of whether the Civil Rights Act provides for attorney fees and costs to be awarded under the catalyst theory for claims brought under the Illinois

4

Constitution.[2] Plaintiffs contend that the circuit court erred in denying their petition for attorney fees and costs. Plaintiffs argue that the plain language of subsections (c)(2) and (d) of section 5 of the Civil Rights Act (740 ILCS 23/5(c)(2), (d) (West 2022)) clearly indicates that they are eligible to recover these fees and costs, as these subsections permit a prevailing party to obtain attorney fees and costs under the catalyst theory. Plaintiffs assert that they qualify as a prevailing party as defined in section 5(d) of the Civil Rights Act because their claim aimed to enforce a right under the Illinois Constitution and served as a catalyst for the unilateral change in the defendants' position.

¶ 12     Plaintiffs' argument presents an issue of statutory construction, which we review *de novo*. *Board of Education of Chicago v. Moore*, 2021 IL 125785, ¶ 18. "The primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 48. The most reliable indication of the legislature's intent is the statutory language, given its plain and ordinary meaning. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. Additionally, when construing a statute, "all of the provisions of an enactment are to be viewed as a whole." *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001). Words and phrases should not be interpreted in isolation; rather, they should be interpreted considering other relevant provisions within the statute. *Id.* When the language is clear and unambiguous, we must apply the statute, as written, without resorting to additional tools for statutory construction. *Id.* However, if the language of the statute is unclear or ambiguous, we may look beyond the statutory language to

---

[2]On June 5, 2024, plaintiffs filed a notice of appeal regarding the written order entered on June 3, 2024. However, the plaintiffs did not address the issues of mootness or the dismissal of their complaint in their opening brief. Therefore, the only issue for this court to consider is whether the circuit court erred in denying their petition for attorney fees and costs. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.").

determine its meaning. *Nowak*, 2011 IL 111838, ¶ 11. A statute is considered ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* In either instance, we may presume that the General Assembly, when enacting the legislation, did not intend to create inconvenience, absurdity, or injustice. *Burger*, 198 Ill. 2d at 40.

¶ 13    Further, Illinois follows the " 'American Rule,' " which provides that, in the absence of explicit statutory authority, each party must bear its own attorney fees and costs. *Negro Nest, LLC v. Mid-Northern Management, Inc.*, 362 Ill. App. 3d 640, 641-42 (2005). "Statutes permitting the recovery of costs are in derogation of the common law and must be strictly construed." *Id.* at 642. A statute "must allow for attorney fees by specific language, such that one cannot recover if the provision does not specifically state that 'attorney fees' are recoverable." *Id.* Applying the aforementioned principles, we can resolve the issue before us by examining the plain language of the Civil Rights Act.

¶ 14    In enacting the Civil Rights Act, the General Assembly established a new venue in state courts for plaintiffs to pursue discrimination actions. *Illinois Native American Bar Ass'n v. University of Illinois*, 368 Ill. App. 3d 321, 327 (2006). Particularly, section 5(a)(2) of the Civil Rights Act prohibits state, county, and local government entities from discriminating against individuals based on race, color, national origin, or gender. 740 ILCS 23/5(a)(2) (West 2022). Section 5(b) allows any person who has experienced a violation of the Civil Rights Act to initiate a civil lawsuit against the government entity that allegedly committed the violation. *Id.* § 5(b). In this case, the provision at issue is the fee shifting provision, which provides:

>    "Upon motion, a court shall award reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in any action brought:

> (1) pursuant to subsection (b); or

> (2) to enforce a right arising under the Illinois Constitution." *Id.* § 5(c).

¶ 15 We observe that the operative word in section 5(c) of the Civil Rights Act is "prevail." See *Larson v. Wexford Health Sources, Inc.*, 2012 IL App (1st) 112065, ¶ 25. In plain language, "prevail" means triumph, predominate, or persist. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/prevail (last visited Apr. 10, 2025) [https://perma.cc/ET7S-JK6L]. However, it is axiomatic that "[t]he law uses familiar legal expressions in their familiar legal sense." *Henry v. United States*, 251 U.S. 393, 395 (1920); see *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 115 (1939) ("we adhere to the familiar rule that where words are employed in an act which had at the time a well known meaning in the law, they are used in that sense unless the context requires the contrary"). In a legal sense, "prevail" means "[t]o obtain the relief sought in an action; to win a lawsuit." Black's Law Dictionary (12th ed. 2024). However, a party can prevail in a court action regardless of whether it obtains court-ordered relief. *Larson*, 2012 IL App (1st) 112065, ¶ 25. Indeed, the Civil Rights Act illustrates the aforementioned by defining the term "prevailing party" as any party "whose pursuit of a non-frivolous claim was a catalyst for a unilateral change in position by the opposing party relative to the relief sought." 740 ILCS 23/5(d)(3) (West 2022). However, even if we were to determine that plaintiffs qualify as a prevailing party under the catalyst theory, they would not be entitled to recover attorney fees and costs under the Civil Rights Act.

¶ 16 When considering the Civil Rights Act as a whole, section 5(a) and (b) collectively establishes a state statutory cause of action for claims of discrimination based on race, color, national origin, or gender. *Thomann v. Department of State Police*, 2016 IL App (4th) 150936, ¶ 30; see *Johnson v. Municipal Employees', Officers' & Officials' Annuity & Benefit Fund*, 2018

7

IL App (1st) 170732, ¶ 14. Further, the basis for such a claim may also be subject to a state constitutional cause of action under the equal protection clause (Ill. Const. 1970, art. I, § 2). *Thomann*, 2016 IL App (4th) 150936, ¶ 30. Thus, section 5(c) allows for awarding attorney fees and costs when a prevailing party successfully brings a *discrimination claim* against a government entity on statutory or constitutional grounds. *Id.*; see *Johnson*, 2018 IL App (1st) 170732, ¶ 15. Here, plaintiffs were not aggrieved parties suing a governmental entity under the Civil Rights Act or under the Illinois Constitution for discrimination based on race, color, national origin, or gender. See *Johnson*, 2018 IL App (1st) 170732, ¶ 23. Thus, the fee-shifting provision outlined in section 5(c) of the Civil Rights Act is inapplicable. See *Thomann*, 2016 IL App (4th) 150936, ¶ 33. It is, therefore, apparent that the circuit court did not err when it denied plaintiffs' petition for attorney fees and costs.

¶ 17    We acknowledge that the issue presented in this case has been addressed by our colleagues of the Appellate Court, Fourth District, in *Thomann*, 2016 IL App (4th) 150936, and subsequently by the Appellate Court, First District, in *Johnson*, 2018 IL App (1st) 170732. On appeal, plaintiffs argue that the appellate court in *Thomann* and *Johnson* deviated from the plain language of the Civil Rights Act by introducing exceptions, limitations, or conditions that were not intended by the legislature. Plaintiffs urge this court not to follow the decisions in *Thomann* and *Johnson*, claiming that the legislative history of the Civil Rights Act supports their argument.

¶ 18    In *Thomann*, the plaintiffs filed a complaint against the defendants, the Department of State Police, the department's then-director, the Concealed Carry Licensing Review Board, and the board's then-members, alleging that the board's procedures in evaluating objections to concealed carry license applications violated their due process rights under the Illinois Constitution and sought attorney fees and costs under section 5(c) of the Civil Rights Act. *Thomann*, 2016 IL App

8

(4th) 150936, ¶ 4. On the defendants' motion, the circuit court dismissed the plaintiffs' complaint as moot and instructed them to file any fee petition within 30 days. *Id.* ¶ 10. Thereafter, the plaintiffs filed a petition for attorney fees and costs and a memorandum in support, contending that section 5(c) of the Civil Rights Act entitled them to recover attorney fees and costs because they had prevailed in a suit that sought " 'to enforce a right arising under the Illinois Constitution.' " *Id.* ¶ 11 (quoting 740 ILCS 23/5(c) (West 2014)). However, the circuit court rejected this argument and dismissed the plaintiffs' fee petition. *Id.* ¶ 15. On appeal, the issue in *Thomann* was whether the trial court erroneously dismissed the plaintiffs' fee petition. *Id.* ¶ 18. The plaintiffs argued that they were entitled to recover attorney fees and costs under section 5(c) of the Civil Rights Act because they were a prevailing party in an action brought to enforce a state constitutional right. *Id.*

¶ 19    In its analysis, the *Thomann* court indicated that the plaintiffs' broad interpretation of the fee shifting provision in section 5(c) conflicted with the statutory scheme. *Id.* ¶ 29. The court explained that "[t]he language regarding the Illinois Constitution allows a prevailing party who brought a discrimination claim on both statutory and constitutional grounds to be entitled to attorney fees and costs." *Id.* ¶ 30. Accordingly, the *Thomann* court affirmed the circuit court's dismissal of the plaintiffs' fee petition. *Id.* ¶ 33.

¶ 20    In *Johnson*, the plaintiffs filed a petition for attorney fees and costs after the Illinois Supreme Court ruled that the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2016)) amendments violated the Illinois Constitution's pension protection clause. *Johnson*, 2018 IL App (1st) 170732, ¶ 1. The circuit court dismissed the fee petition after finding, as a matter of law, that attorney fees and costs were not recoverable because the plaintiffs' claim, which concerned the constitutionality of the Illinois Pension Code amendments, had no relation to the Civil Rights Act. *Id.* ¶ 16. The plaintiffs appealed and argued that section 5(a) and (b) of the Civil Rights Act did

not indicate that the Civil Rights Act, as a whole, was limited to cases of discrimination. *Id.* ¶ 22. On this basis, the plaintiffs argued that the plain language of section 5(c) "opens the way for fees regardless of the nature of the claim as long as it arises under the Illinois Constitution." *Id.* ¶ 19.

¶ 21 In its analysis, the *Johnson* court determined that section 5(a) and (b), together, "create[d] a state statutory cause of action for a claim of discrimination." *Id.* ¶ 14. Additionally, the court explained that the plaintiffs' argument concerning section 5(c) imposed "an unstated and unwritten consequence into unambiguous language," as the language of section 5(c) "recognizes attorney fees [and costs] when a prevailing party successfully brings a discrimination claim on statutory or constitutional grounds." *Id.* ¶¶ 15, 22. Equally important, the *Johnson* court recognized the decision in *Thomann*, stating in its analysis that "*Thomann* got it right in finding an expansive interpretation of the section 5(c)(2) fee-shifting provision as contrary to the statutory scheme, and refusing to apply the section to a prevailing party of any claim arising under the Illinois Constitution, regardless of subject matter or context." *Id.* ¶ 21. Consequently, the *Johnson* court upheld the circuit court's dismissal of the plaintiffs' fee petition, finding that the Civil Rights Act could not "serve as a means for awarding attorney fees, as [the] plaintiffs *** were not aggrieved parties suing under the Illinois Constitution on the subject of discrimination based on race, color, national origin, or gender." *Id.* ¶ 23.

¶ 22 We do not find plaintiffs' argument convincing, as it misinterprets the decisions made by our colleagues. We believe *Thomann* and *Johnson* are well reasoned and applicable to the current case. Furthermore, our decision in this case is dictated by the plain language of the Civil Rights Act as a whole. Therefore, we need not consider its legislative history. See *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 216-17 (1994) ("Where the language of a statute is plain and unambiguous, a court need not consider its legislative history.").

10

¶ 23                                    III. CONCLUSION

¶ 24    For the reasons discussed above, we affirm the circuit court's denial of plaintiffs' petition

for attorney fees and costs.


¶ 25    Affirmed.

*Baruxen v. Hacker*, 2025 IL App (5th) 240701

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 22-LA-6; the Hon. Christopher T. Kolker, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas G. Maag, of Maag Law Firm, LLC, of Wood River, for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and David E. Neumeister, Assistant Attorney General, of counsel), for appellees. |