NOTICE

Decision filed 10/14/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210023-U

NO. 5-21-0023

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| P&S GRAIN, LLC, an Illinois Limited Liability Company, and RONALD OSMAN, Individually, | ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) | No. 10-CH-9 |
| | ) | |
| HERRIN COMMUNITY SCHOOL DISTRICT NO. 4, WILLIAMSON, JACKSON, AND FRANKLIN COUNTIES, a School District Duly Established and Existing in Accordance With the Provisions of the Illinois School Code, | ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | John W. Sanders, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court's order granting the defendant's motion to strike is affirmed where an award of attorney fees pursuant to the common fund doctrine is unwarranted.

¶ 2  Plaintiffs, P&S Grain, LLC, and Ronald E. Osman, appeal the trial court's order granting defendant's motion to strike count II of their second amended complaint that requested attorney fees pursuant to the common fund doctrine because the doctrine is applicable in this case. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     On January 30, 2010, plaintiffs filed a complaint for declaratory judgment and injunctive relief against defendant, Herrin Community School District No. 4, Williamson, Jackson, and Franklin Counties (Herrin), contending Herrin improperly used funds received pursuant to the Illinois County School Facility Occupation Tax Law (55 ILCS 5/5-1006.7 (West 2010)) towards refunding bonds.

¶ 5     Plaintiffs filed an amended complaint on December 9, 2015, limiting the dates of the action from October 1, 2008, to August 22, 2011, because section 5-1006.7(h) was amended by Public Act 97-542 (eff. Aug. 23, 2011) to allow expenditures of the School Facility Occupation Tax Fund toward refunding bonds. The amended complaint requested (1) a declaratory judgment finding Herrin's expenditures towards the refunding and revenue source bonds were not for school facility purposes pursuant to the statute during the applicable period; (2) an order for an accounting by Herrin of all payments made with the School Facility Occupation Tax Fund that were related to the refunding bonds; and (3) repayment by Herrin to the School Facility Occupation Tax Fund in the amount determined by the accounting that was improperly used toward the bonds.

¶ 6     Following cross-motions for summary judgment, the trial court granted summary judgment for plaintiffs on the declaratory judgment action. Herrin appealed the decision, which was affirmed by this court on June 18, 2018, and remanded for further proceedings. *P&S Grain, LLC v. Herrin Community School District No. 4*, 2018 IL App (5th) 160428-U.

¶ 7     On remand, plaintiffs filed a motion for a status conference to establish a timeframe for Herrin's court-ordered accounting. On August 8, 2019, Herrin filed a motion for final resolution advising the court that the accounting revealed $2,729,625.10 was improperly paid toward the

2

refunding bonds. The prayer for relief requested payment, via internal interfund transfer over the next 10 fiscal years, consisting of 10 equal installments, ending on June 30, 2029.

¶ 8　　On September 19, 2019, plaintiffs filed a response to defendant's motion for final resolution along with a motion for leave to file a second amended complaint. On October 22, 2019, the trial court granted plaintiffs' motion for leave, and plaintiffs' second amended complaint was filed. Count I requested a declaratory judgment finding that Herrin's expenditures of the School Facility Occupation Tax Fund were not for school facility purposes as per the statute, an accounting of the improperly used funds, and entry of a judgment against Herrin in the amount of the repayment due to the School Facility Occupation Tax Fund as determined by the accounting, "assessing 6% interest on that amount pursuant to 735 ILCS 5/2-1303 until the judgment is paid in full." Count II requested attorney fees under the common fund doctrine, contending that a judgment entered against Herrin "creates a fund for which ownership sits with all persons or entities collecting or paying sales tax in Williamson County, Illinois, during the period of October 1, 2008, to August 22, 2011." This count further alleged that plaintiffs created the fund and no "other person or entity collecting or paying sales tax in Williamson County *** participated in the creation of this fund." Plaintiffs claimed that "[a]ll persons or entities collecting sales tax or paying sales tax in Williamson County, Illinois," from October 1, 2008, to August 22, 2011, would benefit from the fund "by the fact that their sales tax payments will be utilized as required by the County School Facility Occupational Tax Law." Plaintiffs further contended that equity required that "all persons or entities collecting sales tax or paying sales tax in Williamson County *** contribute to the costs of this litigation." Plaintiffs' prayer for relief requested a declaratory judgment finding they were entitled to attorney fees pursuant to the common fund doctrine "from the repayment fund created in this matter" and an entry of

3

judgment against Herrin requiring it to pay "one-third of the repayment amount adjudged in Count I to Plaintiffs for attorney's fees."

¶ 9    On November 20, 2019, Herrin filed a motion to strike plaintiffs' second amended complaint contending, *inter alia*, that the common fund doctrine was inapplicable because there was no "common fund" and a diversion of tax funds for attorney fees was prohibited based on language in *Hamer v. Kirk*, 64 Ill. 2d 434 (1976). Plaintiffs filed a response on December 17, 2019, again requesting statutory interest and attorney fees under the common fund doctrine. On March 9, 2020, Herrin filed a memorandum in support of its motion to strike plaintiffs' second amended complaint, which, in addition to the prior arguments, contended that attorney fees were unrecoverable because Osman was representing himself *pro se*. On March 11, 2020, plaintiffs filed a "notice of filing case law" submitting copies of numerous cases with the trial court; however, no written summary of those cases was ever provided. Oral argument was held on March 11, 2020.

¶ 10    On April 14, 2020, the trial court issued an order denying Herrin's motion to strike the request for interest in count I after finding the issue premature and granting Herrin's motion to strike the request for attorney fees in count II. The trial court found the case was similar to *Hamer*, in that no new fund would be created from the litigation and, therefore, no fund would be under the court's control.

¶ 11    On May 8, 2020, Herrin filed its verified answer to the second amended complaint and on May 21, 2020, filed a motion for case management conference. A hearing was set for July 21, 2020. On July 24, 2020, plaintiffs filed a motion for entry of judgment requesting a (1) money judgment in the amount of $2,729,625.10 in favor of Herrin's School Facility Occupation Tax Fund and (2) denial of plaintiffs' request for attorney fees in accordance with the common fund

4

doctrine to preserve the issue for appeal. On September 9, 2020, Herrin filed a response requesting, *inter alia*, (1) a finding that the CPA conducted an appropriate accounting that revealed $2,729,625.10 was improperly utilized from October 1, 2008, to August 22, 2011, toward the revenue bonds, (2) an order requiring Herrin to replenish the funds with internal interfund transfers consisting of 10 equal installments over the next 10 years ending on June 30, 2029, (3) an order requiring the replenished funds be utilized for any allowable purpose under amended section 5-1006.7, and (4) denial of plaintiffs' interest and attorney fee requests.

¶ 12 On January 14, 2021, the trial court issued a judgment incorporating this court's prior decision to find that Herrin improperly utilized $2,729,625.10 of its School Facility Occupation Tax Fund from October 1, 2008, to August 22, 2011. The court further found that it previously dismissed plaintiffs' request for attorney fees pursuant to the common fund doctrine and the ruling was correct. Thereafter, the trial court ordered that:

> "A. Judgment is entered in favor of the Capital Projects Fund for the benefit of Herrin Community School District No. 4 County School Facility Occupation Tax Law fund account established in accordance with 55 ILCS 5/5-1006.7 and against the Herrin Community School District No. 4 in the amount of $2,729,625.10[.]
>
> B. Herrin Community School District No. 4 shall transfer $2,729,625.10 from its education fund or other appropriate fund to its capital projects fund for the benefit of Herrin Community School District No. 4 County School Facility Occupation Tax Law fund established in accordance with 55 ILCS 5/5-1006.7 to satisfy the $2,729,625.10 judgment.

C. Plaintiffs' request for attorney's fees in accordance with the Common Fund Doctrine is denied with prejudice.

D. The issues of interest on the judgment in accordance with 735 ILCS 5/2-1302 and repayment of the Judgment in installments are not properly before this Court at this time."

¶ 13 On January 27, 2021, plaintiffs appealed that portion of the January 14, 2021, judgment denying recovery of attorney fees in accordance with the common fund doctrine.

¶ 14                                    II. ANALYSIS

¶ 15 On appeal, plaintiffs argue they are entitled to attorney fees pursuant to the common law doctrine because plaintiffs created a fund for which ownership sat with all persons or entities collecting or paying sales tax in Williamson County, Illinois, during the period of October 1, 2008, to August 22, 2011. Plaintiffs argue that they "alone created the fund and that all persons or entities collecting sales tax or paying sales tax in Williamson County, Illinois," from October 1, 2008, to August 22, 2011, would benefit from the fund "by the fact that their sales tax payments will be utilized as required by the County School Facility Occupational Tax Law." Plaintiffs further argue that equity required that all persons or entities collecting sales tax or paying sales tax in Williamson County, during the applicable period, contribute to the costs of the litigation and that the trial court's reliance on *Hamer* was unwarranted. Finally, plaintiffs argue that their attorney is not precluded from an award under the common fund doctrine due to his *pro se* status because he also represented P&S Grain. In response, Herrin requests affirmation of the trial court's motion to strike the attorney fee count relying on *Hamer*, stating there is no common fund in this case and that both the diversion of tax funds to pay attorney fees and payment of attorney fees under common fund doctrine for a *pro se* attorney were precluded.

6

¶ 16    " 'Whether the common fund doctrine applies to any particular case is a question of law which we review *de novo*.' " *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190, ¶ 16 (quoting *Linker v. Allstate Insurance Co*., 342 Ill. App. 3d 764, 770-71 (2003)). Generally, parties to litigation are responsible for their own attorney fees and costs. *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161, ¶ 10 (citing *In re Marriage of Murphy*, 203 Ill. 2d 212, 222 (2003)); see also *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572 (2000). This policy, known as the American Rule, has exceptions, which include the common fund doctrine. *Kitzman*, 193 Ill. 2d at 572-73. The common fund doctrine "permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Id*. at 572-73 (citing *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996)). "The litigant or lawyer who recovers a common fund for the benefit of others is entitled to a reasonable attorney fee from the fund as a whole." *Id*. at 573. "The common fund doctrine does not authorize a party to shift fees to an adversary, but rather authorizes the spread of fees among those who benefitted from the litigation. *Id*. at 572. The basis for the equitable concept underlying the common fund doctrine is that "[i]f the costs of litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts." *Id*. at 573. "To sustain a claim under the common fund doctrine, the attorney must show that (1) the fund was created as the result of the legal services performed by the attorney, (2) the subrogee or claimant did not participate in the creation of the fund, and (3) the subrogee or claimant benefited or will benefit from the fund that was created." *Bishop v. Burgard*, 198 Ill. 2d 495, 508 (2002).

¶ 17    "Whether the doctrine applies in a particular case is not determined by a label, but rather by a proper understanding of the doctrine and its limitations." *Kitzman*, 193 Ill. 2d at 573. In

7

Illinois, the doctrine has been applied to class actions (*Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235 (1995)), subrogation actions (*Stevens v. Country Mutual Insurance Co.*, 387 Ill. App. 3d 796 (2008)), will contests which preserved an estate (*In re Estate of Pfoertner*, 298 Ill. App. 3d 1134 (1998)), shareholder derivative actions (*Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558), and is not preempted in ERISA-based claims (*Scholtens v. Schneider*, 173 Ill. 2d 375 (1996), *Bishop v. Burgard*, 198 Ill. 2d 495 (2002), and *Schrempf, Kelly, Napp & Darr, Ltd. v. Carpenters' Health & Welfare Trust Fund*, 2015 IL App (5th) 130413).

¶ 18    Conversely, the doctrine was rejected in cases where the judgment did not involve a monetary award and no fund was created (*Hamer v. Kirk*, 64 Ill. 2d 434, 440 (1976), and *Hoffman v. Lehnhausen*, 48 Ill. 2d 323, 329 (1971)), cases where the alleged beneficiary already had a creditor's right to payment (*Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261 (2011), and *Maynard v. Parker*, 75 Ill. 2d 73 (1979)), and cases in which services were knowingly rendered to an unwilling recipient (*Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376 (2001), and *Tenney v. American Family Mutual Insurance Co.*, 128 Ill. App. 3d 121 (1984)).

¶ 19    In the case at bar, the trial court relied heavily on *Hamer* and found that no new fund would be created from plaintiffs' litigation and, therefore, no fund would be under the control of the court. Herrin was equally reliant on *Hamer*, contending the decision supported the conclusion that there was no legal authority to divert money that has been levied from taxpayers to pay legal fees pursuant to the common fund doctrine. *Hamer*, 64 Ill. 2d at 441. We note Herrin relies on a section quoted in *Hamer* that arises from *Hoffman*, 48 Ill. 2d at 329, in which the Illinois Supreme Court stated, "We are aware of no authority under which the process of tax collection

and distribution could have been interrupted to divert from the governmental bodies that had levied the taxes an amount fixed by the court as fees for the attorneys for the plaintiffs." While the language remains relevant (see *Johnson v. Municipal Employees', Officers' & Officials' Annuity & Benefit Fund*, 2018 IL App (1st) 170732, ¶ 32), the attorney fee denials in *Hamer* and *Hoffman* had no fund from which attorney fees could be taken.

¶ 20    In *Hamer*, the petitioner successfully obtained equalization of property tax assessments for each township in Lake County. *Hamer*, 64 Ill. 2d at 436. Rather than require the Department of Revenue to recall and recompute the multipliers used for taxes in a prior year, due to the delay associated with such action, the court set the equalization for 1975. *Id.* at 408-11. As such, although Hamer suggested numerous "funds" from which he could receive recompense, none existed. *Id.* at 438-40. In *Hoffman*, the Illinois Supreme Court found the statutory homestead exemption for residential property occupied by persons over 65 years of age was unconstitutional. *Hoffman*, 48 Ill. 2d at 328. Again, no fund was created. *Id*. at 329. While the court noted that "allowances of fees and expenses to those who volunteer to represent the rights of others" were more freely made now than in the past (citing *Mills v. Electric Auto-Lite Co*., 396 U.S. 375 (1970)), the court relied on *stare decisis* to deny the requested attorney fee award, stating "that a legal doctrine established in a case involving a single litigant characteristically benefits all others similarly situated." *Hoffman*, 48 Ill. 2d at 329-30. We note that neither case involved a monetary award or judgment.

¶ 21    Contrary to Herrin's contentions, the issue of whether governmental funds can be diverted for attorney fees under the common fund doctrine was already decided in *Flynn v. Kucharski*, 59 Ill. 2d 61 (1974) (abrogated on other grounds by *Brundidge*, 168 Ill. 2d at 243-44), a case not cited by either party. In *Flynn*, a class action was brought challenging the statutory

method of tax collection in Cook County and the statute was found unconstitutional. *Flynn v. Kucharski*, 45 Ill. 2d 211 (1970). On remand, the trial court ordered all funds in the possession or control of the townships be disbursed to the trustee appointed to receive such funds, and, after petitions for fees and costs were entertained, the remaining funds would be disbursed to the Cook County collector; this mandate was affirmed. *Flynn v. Kucharski*, 49 Ill. 2d 7, 10-13 (1971). Following remand from an unsuccessful *mandamus* claim (*Flynn v. Kucharski*, 53 Ill. 2d 88 (1972)), the trial court awarded $750,000 to the plaintiffs in attorney fees. *Flynn v. Kucharski*, 59 Ill. 2d 61, 63-64 (1974). On appeal, the supreme court distinguished *Hoffman* and *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority*, 51 Ill. 2d 126 (1972),[1] noting that no fund was created in either case. *Flynn*, 59 Ill. 2d at 64-65. Ultimately, the court allowed the attorney fees but reduced the award because the plaintiffs failed to keep accurate records of their time. *Id*. at 67.

¶ 22    We now consider whether the common fund doctrine is applicable in the case at bar, keeping in mind that the "basic policy underlying the common fund doctrine is the prevention of unjust enrichment." *Kitzman*, 193 Ill. 2d at 569. First, we consider whether there is a common fund. Here, plaintiffs contend that they created a fund, consisting of $2,729,625.10. They claim this is a new fund because the prior funds in the School Facility Occupation Tax Fund were already spent. Conversely, Herrin contends that no new fund was created because the amount of the judgment is a reimbursement from one of Herrin's other accounts to its "School Facility Occupation Tax Fund" account.

---

[1]In *Rosemont Building Supply*, the Illinois Supreme Court found that the Illinois Highway Trust Authority Act was unconstitutional, and it was undisputed that no fund or monetary award was involved. *Rosemont Building Supply*, 51 Ill. 2d at 129-30. While plaintiff argued that the lack of fund was "irrelevant," the supreme court declined to extend an award of attorney fees and costs under the common fund doctrine to "litigation wherein the plaintiff seeks a declaratory judgment that a legislative enactment is unconstitutional" when no fund was created. *Id*. at 130.

10

¶ 23    We consider the facts in the case at bar with those set forth in *Flynn* and *Hamer*. In *Flynn*, a fund was created by subsuming the tax payments that were in the possession or control of each township on December 15, 1969. *Flynn*, 59 Ill. 2d at 63. Conversely, in *Hamer*, no fund was created. Here, the trial court's judgment required Herrin to transfer funds from one of its education accounts to replenish the funds previously disbursed toward revenue bonds from the School Facility Occupation Tax Fund. We find this scenario more consistent with *Flynn* than *Hamer*, and that plaintiffs "increased the value of" Herrin School District No. 4's School Facility Occupation Tax Fund by this litigation and the court's monetary award. While a "fund" exists, the finding is not dispositive of this appeal, as the "basic policy underlying the common fund doctrine is the prevention of unjust enrichment" by a beneficiary of the litigation. *Kitzman*, 193 Ill. 2d at 569.

¶ 24    As such, we next determine the beneficiary of the litigation. Plaintiffs argue that the taxpayers and collectors of the School Facility Occupation Tax are the "owners" and beneficiaries of the fund. Despite this contention, plaintiffs concede that neither the taxpayers nor collectors of the tax would receive any funds from plaintiffs' lawsuit. Plaintiffs further contend that it is unnecessary for the taxpayers or collectors of the tax to receive anything in the litigation to trigger the common fund doctrine based on *Bishop v. Burgard*, which stated, "[f]or purposes of applying the common fund doctrine, it is irrelevant that the party who benefits from a lawyer's services has a *right* to compensation, be it an undifferentiated right of reimbursement or subrogation as is asserted here, or a right to compensation under some other theory." (Emphasis in original.) *Bishop*, 198 Ill. 2d at 510.

¶ 25    We disagree with plaintiffs' interpretation of *Bishop*. The common fund doctrine authorizes the spread of attorney fees among the beneficiaries of the fund from the "fund as a

whole." (Internal quotation marks omitted.) *Scholtens*, 173 Ill. 2d at 385. In *Bishop*, the administrator of the plaintiff's benefit plan received a reduction in reimbursement for medical benefits paid on plaintiff's behalf due to the common fund doctrine. *Bishop*, 198 Ill. 2d at 496. The administrator argued that the language in the plan required 100% reimbursement and claimed it would not be unjustly enriched by the litigation because it would "merely return it to the position it enjoyed prior to Bishop's accident." *Id*. at 508. The court disagreed, finding the administrator "disingenuous" or entirely missing the point of its decision in *Scholtens* and the purpose of the common fund doctrine. *Id*. at 508-09.

¶ 26    Unlike the administrator in *Bishop*, who received monetary reimbursement from the fund created by Bishop's attorney, here, the taxpayers and the collectors of the tax receive no direct recompense from the fund and therefore have nothing to contribute from the "fund as a whole" toward plaintiffs' claim for attorney fees under the common fund doctrine. It is equally notable that some taxpayers will not even receive an indirect benefit from this litigation, as some may have no connection to Herrin's schools. As such, it is not possible under these facts to find that "the taxpayers and collectors of the tax" will be unjustly enriched by the increased value of the School Facility Occupation Tax Fund as is required to trigger the common fund doctrine.

¶ 27    We also consider Herrin's claim that there "is no beneficiary in this instance" and again disagree. The statute provides authority to the Department of Revenue (Department) to collect and deposit the taxes authorized by the statute into a special fund. 55 ILCS 5/5-1006.7(a) (West 2010). The statute then requires the Department to provide a disbursement certification to the Comptroller setting forth "[t]he amount to be paid to each regional superintendent of schools," and the Comptroller, within 10 days of receipt of the certification, causes "the orders to be drawn for the respective amounts in accordance with directions contained in the certification." *Id.* § 5-

1006.7(d). The regional superintendent of schools must then disburse those proceeds "to each school district that is located in the county in which the tax was collected" within 30 days of receiving the proceeds from the Comptroller. 105 ILCS 5/3-14.31(a) (West 2010). Once the school district receives the funds from the regional superintendent, the school district must place the funds in a special fund known as the school facility occupation tax fund. *Id.* § 10-20.43. Thereafter, the funds can only be used in the manner as directed by statute. *Id.*; see also 55 ILCS 5/5-1006.7(h) (West 2010). Based on the statutory requirements addressing the funds, we agree with the trial court's judgment, and find the beneficiary of the fund is the Herrin School District No. 4 School Facility Occupation Tax Fund.

¶ 28     We note, however, that the Herrin School District No. 4 School Facility Occupation Tax Fund was always entitled, pursuant to the statute, to the $2,729,625.10 awarded by the trial court and, therefore, is not unjustly enriched by receiving funds replenishing the amount previously depleted by past payments toward the revenue bonds. While plaintiffs repeatedly argue that all they needed for an award of attorney fees was a judgment, we disagree with the contention. The well-established policy underlying the common fund doctrine, as enunciated by our supreme court, is "the prevention of unjust enrichment." *Kitzman*, 193 Ill. 2d at 569; see also *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 124 (1977); *Scholtens*, 173 Ill. 2d at 385; *Wendling*, 242 Ill. 2d at 265. Here, there was no evidence that Herrin's School Facility Occupation Tax Fund was unjustly enriched by receiving funds it was entitled to receive by statute.

¶ 29     Finally, we also disagree with plaintiffs' contention at oral argument that Herrin should have to pay a "penalty." The underlying basis for an award of attorney fees under the common fund doctrine is unjust enrichment, not punishment for unsuccessful litigation. Further, we find plaintiffs' request contrary to both its prior position before this court and the statute. Plaintiffs'

13

complaints alleged that Herrin improperly used funds generated from the tax authorized by the Illinois County School Facility Occupation Tax Law (55 ILCS 5/5-1006.7) by using the funds to pay the interest on the revenue bonds, which was not one of the statutorily allowed uses. See *P&S Grain*, 2018 IL App (5th) 160428-U, ¶ 11. Under principles of statutory interpretation, this court agreed that "financing" did not include payments toward revenue bonds and remanded the case for further proceedings. *Id.* ¶¶ 31-36, 42. On appeal, plaintiffs request attorney fees from the same monies established pursuant to section 5-1006.7. However, just as the prior statute prohibited defendant from using the School Facility Occupation Tax Fund towards refunding bonds, nothing in either the former, or current, statutory language of section 5-1006.7 allows for a diversion of those funds to pay attorney fees. "It is never proper for a court to depart from plain language by reading into the statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent." *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 429 (2005). As such, we decline plaintiffs' request that we read an equitable exception for attorney fees into the statute under the common fund doctrine.

¶ 30     Given our findings herein, the issue of plaintiff Osman's *pro se* status is moot.

¶ 31                                III. CONCLUSION

¶ 32     For the foregoing reasons, we affirm the trial court's judgment striking count II of plaintiffs' second amended complaint.


¶ 33     Affirmed.